## Akins v. City of Covington et al.

(Decided Oct. 23, 1936.)

WILLIAM J. DEUPREE for appellant.

RALPH P. RICH for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal involves the question of the proper construction of a written lease of a lot, executed on March 1, 1935, by the city of Covington to the appellant, Charles Akins.

The appellant having thereupon taken possession, he erected a small improvement thereon, which he has used for a soft drink business in connection with his use of the lot for his parking and automobile servicing business.

Appellant continued in such use and enjoyment of the premises leased him for about a year, or until March, 1936, when he was given written notice, duly served on him on March 19, 1936, by his lessor, the city of Covington, that by reason of its having contracted for the sale of this lot to the coappellee, Herman Mergard, Jr., it would cancel the lease, and that appellant would be required on May 1, 1936, to surrender to it possession of the premises.

Thereupon appellant filed this suit in equity under the Declaratory Judgment Act (Civ. Code Prac. sec. 639a-1 et seq.), asking for a declaration of his right, as

tenant under the lease, to hold possession of the lot for the full five-year term therein set forth.

The language of the habendum clause of the lease here sought to be construed is as follows:

"To have and to hold the same with the appurtenances unto the said lessee, his executors, administrators and assigns on a monthly term, renewable monthly for a period of five years, and beginning on March 1, 1935; Provided, however, that this lease shall not be cancelled by either party during a period of six months, beginning March 1, 1935."

By his petition the plaintiff pleaded that, by such provision of the lease, it was stipulated and agreed that he should hold the leased lot for a period of five years next after March 1, 1935, at a monthly rental of $25, payable in advance, and which instrument he duly recorded. Further he pleaded, which is not denied, that he made each of his monthly payments as required under said lease, and fully performed all the terms thereof; that he was now in possession of the property, had invested considerable sums of money in improving same, and would suffer irreparable damage in his business if this five-year lease were now terminated. Therefore, he asked for a declaration of his rights as tenant under the lease, upon the question involved, of for what term or period the premises in question have been leased him by the defendant city and whether the coappellee, Herman Mergard, Jr., takes the leased premises, as its vendee, subject to the plaintiff's right of tenancy therein for the stated period.

Defendant answered, making a general denial of the allegations of the petition, affirmatively pleaded that the terms of the lease were so ambiguous as to require extraneous evidence for their construction, and further cross-petitioned to recover possession of the property.

Plaintiff demurred to these paragraphs of the answer, which was overruled by the court, it holding as a matter of law that the clause of the lease involved was ambiguous, and that extrinsic evidence should be introduced to explain its terms.

This being done, upon submission the court adjudged that the lease should be construed as a tenancy from month to month, with a right to cancel same there-

by given either party after it had run six months next following its execution.

Appellant complains of this ruling as being prejudicially erroneous to his substantial rights as lessee, and appeals, seeking its reversal upon this one ground, as to which, it appears, the parties are agreed that it presents but the one question of whether or not the court erred in holding as a matter of law that the clause of the lease in controversy was so ambiguous in its wording that it failed to express the intention of the parties. Appellant further urges that if same is ambiguous at all, its ambiguity is patent upon the face of the lease, and, therefore, being such, does not authorize the introduction of extrinsic evidence to modify its construction, either enlarging or restricting the terms of the lease itself.

Conceding, only arguendo, that the terms of the lease (as held by the trial court) presented an ambiguity, whether latent or patent in its nature, that called for the introduction of extrinsic evidence to aid it in ascertaining the intended meaning of the parties in their use of the terms employed, it is yet to be noted that the court, after its complained of admission of such evidence and when guided by it in its interpretation of the lease, construed the lease as one, by its terms, intended to create a tenancy by the month, subject to cancellation by either party thereto after same had been in effect for a period of six months after its execution.

Therefore, such being the decision of the court, however reached, whether by the aid of evidence aliunde the lease or not, the further question is: Was such construction, as was thus given the lease, a proper one? Answering this, after a careful consideration of the express terms of this habendum clause of the lease in controversy, it is our conclusion that this construction of the lease is correct, even though we conceive the same is not ambiguous in its language and terms, but that they, with reasonable clearness, declare and manifest the intention of the parties thereto, to make a lease by the month, renewable monthly, at a rental of $25 a month, for a period of five years, subject to the qualifying proviso that this created "tenancy by the month" should not be canceled until the same had run for six months after its execution on March 1, 1935.

The long-established and well-settled general rule, controlling the right to introduce extrinsic evidence to

modify or vary. the terms of a written contract, is that such evidence is inadmissible for such purpose, in absence of either fraud, accident, or mistake in its procurement. Reference is here made to 8 Ky. Digest, Evidence, p. 602, 397, citing a large number of cases wherein this rule has been repeatedly so announced and applied. Further, in Goldstein v. McDonald, 223 Ky. 161, 3 S. W. (2d) 200, it was held that where the terms of a written contract express the intention of parties as agreed, they cannot. be varied or contradicted by evidence aliunde the written contract. Compare, also, L. C. Powers & Sons v. J. E. Brogdon Sheet Metal Works, 231 Ky. 103, 21 S. W. (2d) 131; Clark et al. v. Ferguson, 231 Ky. 36, 20 S. W. (2d) 1013.

The reason for such rule of exclusion of parol evidence is that where, under the general rules governing the construction of written instruments, the contract can be given a consistent meaning as a whole, parol evidence is inadmissible to explain it. Harmon v. Thompson, 119 Ky. 528, 84 S. W. 569, 27 Ky. Law Rep. 181; Corbin v. Milward, 158 Ky. 308, 164 S. W. 974.

However, as supplementing and qualifying this general rule, it is held that parol evidence is admissible to explain ambiguities appearing in an incomplete written instrument, even though inadmissible to vary the terms of an instrument on its face embodying the entire engagement of the parties. Fairbanks-Morse & Co. v. Manning & Combs, 164 Ky. 478, 175 S. W. 1000.

Also, as a further limitation upon this general rule, excluding extrinsic evidence, we said in Macpherson v. Bacon's Ex'r, 180 Ky. 773, 203 S. W. 744, 746, under the exceptional facts and circumstances there presented, that:

"It is likewise true that, as is contended, ambiguous and uncertain expressions in the written evidence of a contract may be explained by parol evidence, or as it seems by written evidence, to the end that the true meaning of the contract may be ascertained, and such may be done in the absence of a plea of fraud or mistake. Crane v. Williamson, 111 Ky: 271, 63 S. W. 610, 975, 23 Ky. Law Rep. 689; Skaggs v. Simpson, 110 S. W. 251, 33 Ky. Law Rep. 410; Westinghouse Electric Co. v. Greenville Coal Co., 169 Ky. 280, 183 S. W. 901."

Also see Day v. Asher, 141 Ky. 468, 132 S. W. 1035.

An ambiguity arising out of proof of extrinsic facts may be explained by extrinsic evidence. Breeding's Heirs v. Taylor's Heirs, 13 B. Mon. 477. See, also, 10 R. C. L. 1069, secs. 264, 265, 266, 271 and 272; 22 C. J. 1129, sec. 1500.

In the light of these principles announced by the authorities cited supra, it is to be taken as settled that it is not every contract of vague or obscure meaning that calls for or will admit of other evidence to aid in its interpretation.

As said in Harmon v. Thompson, 119 Ky. 528, 84 S. W. 569, 571, 27 Ky. Law Rep. 181:

"If the paper itself affords a reasonably clear understanding of what the parties have engaged themselves to, it is safer, and it is the law, that its language alone should be consulted in arriving at that meaning. It is upon that reason that such rules as that all the terms of the writing must be consulted and reconciled, if possible, are founded. * * * The writing is the best evidence, and, so long as it can be produced, is the only evidence receivable, of what the parties have agreed to do, and of their whole meaning with reference thereto. It were better if all agreements were perfectly clear and free from controversy. But they are not. It does not at all follow from that fact, though, that all agreements not perfectly plain and having but one possible interpretation are subject to be explained in every case by extraneous and parol evidence. * * * It is because such is not the law that the numerous rules for construing written contracts are in existence. For, most obviously, a perfectly plain, undoubted meaning needs no rule to aid in its construction. So, when the written terms seem to be in conflict with each other—where some part of the writing is apparently inconsistent with another part —it does not follow that the bars are to be let down, and parol evidence, with its train of uncertainties, admitted. Before that is allowed, the resources of the paper itself must be exhausted. That is what the law assumes the parties intended by reducing the agreement to writing, for, if it were to be left to parol testimony as to any part of its meaning, it was idle to have been to the trouble of having it written down. When, after applying to the writing

hose rules of interpretation found safe and just in the experience of the law, the meaning, or the probable meaning, in law, of the parties, can be fairly gathered with a certainty satisfying the judicial mind, the courts will consult the writing alone, rejecting extraneous evidence as aid in construing it.''

We regard the language of this quoted opinion to be exactly here in point and controlling of the question here presented, as to whether the language of the habendum clause of the lease in evidence is so obscure and ambiguous as to fail to express the meaning of the parties and to call for the aid of evidence outside the lease o ascertain its meaning, when tested by the rule excluding its admission until ''the resources of the paper itself must be exhausted.''

The first provision of the clause in controversy creates a lease, upon the terms of a monthly tenancy for i ve years, while by its second or added proviso there is given by clear implication an option to the parties to cancel the lease after it has run six months following its execution. The language of the lease thus being that it is a tenancy by the month and renewable monthly for a period of five years, it must, if any meaning and effect is to be given this qualifying provision of the clause, be held to be a tenancy for such five-year term, should either party not see fit, after the lease had run six months, to cancel it within the remaining part of the five-year period. The provision of the lease, that this tenancy by the month, for a five-year period, is not to be canceled until it has first run six months, must clearly be taken to conversely evidence by implication the parties' agreement that it might, after running for such time as a tenancy by the month, then at the option of either be canceled. Without such an interpretation is given this clause of the lease, giving the parties the option or right to so cancel it, this term of the lease (clearly a material part of it) is rendered meaningless and of no force, in that it would result that the parties thereto would be deprived of the right to cancel it at any time during the five-year term, notwithstanding that by this express provision against its cancellation during the first six months' period it is indisputably conversely implied that it may be canceled.

Such being our view as to the meaning and proper construction of the lease, and that its provisions are not

so uncertain or conflicting in their character as to call for the admission of extraneous and parol evidence for their explanation, it is our conclusion that the same was improperly here admitted by the learned chancellor.

However, the chancellor having, as we conclude, yet properly decided and construed the lease in question as one of a tenancy by the month and as such subject to cancellation, at the option of either party, after it had run six months, it must result that appellant was not prejudiced by the chancellor's admission of extraneous evidence (even conceding same was erroneous), whereby he was aided in reaching a correct construction of it, since it is a well-founded rule that where a judgment of the lower court is correct, but reason upon which based is wrong, it is not to be reversed upon appeal because of such basic error. Section 756, Civil Code of Practice; Ireland v. Berryman, 3 Bush, 356; Commonwealth v. McCauley's Ex'r, 166 Ky. 450, 179 S. W. 411; Ball v. Wasioto, etc., Ry. Co., 157 Ky. 166, 162 S. W. 810.

It follows, therefore, for the reasons indicated, that the decree of the learned chancellor should be, and it is affirmed.