**DEPARTMENT OF HIGHWAYS, Commonwealth of Kentucky, Appellant,**

**v.**

**Mell TARTER and Kentucky Workmen's Compensation Board ex rel. Paul E. Hayes, Chairman, J. J. Tye and Allen P. Cubbage, Members, Appellees.**

Court of Appeals of Kentucky.

Dec. 3, 1954.

As Modified on Denial of Rehearing March 18, 1955.

J. D. Buckman, Jr., Atty. Gen., C. J. Waddill, Asst. Atty. Gen., S. Charles Barnard, Asst. Atty. Gen., for appellant.

M. D. Harris, Somerset, for appellees.

STEWART, Chief Justice.

This is an appeal from a judgment of the Franklin Circuit Court, sustaining an opinion and award of the Workmen's Compensation Board of July 7, 1953, wherein appellee, Mell Tarter, was held to be entitled to compensation for total and permanent dis-

ability at the rate of $24 per week for a period of not longer than 10 years after the date of his injury, together with medical, surgical and hospital benefits to be paid by appellant, not to exceed the sum of $2,500, appellant to receive credit for all payments previously provided. The Board further adjudged appellee should recover interest at the rate of 6% on all past due and unpaid installments of compensation beginning October 22, 1952, the date of reopening his case.

Appellee, Mell Tarter, an employee of appellant, Department of Highways of the Commonwealth of Kentucky, suffered severe personal injuries from an accident on August 28, 1950, which arose out of and in the course of his employment. The result was a fracture in the cervical region of the spine. On October 26, 1951, the parties hereto entered into an agreed settlement which was subsequently confirmed by the Board and which provided for the payment of compensation to appellee for temporary total disability for a period of 37 weeks and for the payment of compensation for permanent partial disability at the rate of $10.50 per week for 413 weeks. It was also stated therein that the probable extent of impairment was "permanent partial disability rated at 50 per cent." On the same date the Board further approved settlement of the foregoing award in a lump sum and ordered appellant to pay appellee the sum of $3,651.67.

Appellee moved to reopen his case on October 22, 1952, pursuant to KRS 342.125 which authorizes the Board, so far as applicable here, on its own or the motion of an interested party and a showing of change of conditions, mistake or fraud, to review any award and change it within the maximum and minimum of the applicable compensation statute or revoke its previous order. This statute further reads: " * * * Review under this section shall be had upon notice to the parties interested and shall not affect the previous order or award as to any sums already paid thereunder." The motion to reopen the case was pitched upon the ground of "change of conditions" of appellee and was upheld by the Board's order of November 8, 1952. On May 19, 1953, a full Board review determined that appellee was 100 per cent totally and permanently disabled and allowed him the additional compensation benefits we have previously recited. The award and opinion were based upon alleged fraud perpetrated upon the Board by the joint action of the parties. This appeal is from the judgment of the circuit court affirming the finding of the Board.

The contentions argued by appellant for reversal are: First, the decision of the Board was based upon a ground other than that set forth in appellee's motion to reopen, with the result that appellant had no notice this ground was relied upon and therefore had no chance to defend against it. Secondly, the finding of the Board that the parties misrepresented the extent and duration of appellee's disability is not supported by the evidence insofar as appellant is concerned. We shall consider these two alleged errors in the inverse order.

The Board's opinion states it granted a review to appellee and increased his compensation benefits because when appellant and appellee submitted for its approval the agreed settlement on October 26, 1951, based upon 50 per cent permanent partial disability, they fraudulently concealed from it the extent and duration of appellee's incapacity, whereas the Board takes the position that both of the parties knew at the time of the execution of the agreement that appellee was totally and permanently disabled. We do not believe there is a basis for this conclusion.

The record reveals that only one witness gave medical testimony throughout in this case, namely, Doctor Morris Holtzclaw of Somerset. He examined appellee on August 28, 1950, the date he was hurt, and thereafter wrote a letter to appellant on August 14, 1951, that was filed with the Board with the agreed settlement, which expressed the view that as a result of his injuries appellee was "at least 50 per cent totally and permanently disabled." It was this communication, appellant asserts, that prompted it to settle with appellee on October 26, 1951, for 50 per cent permanent

partial disability, although it concedes appellee at the time maintained he was totally incapacitated.

Doctor Holtzclaw gave a supporting affidavit as to appellee's physical condition when the latter moved to reopen this case and, at a later date, this doctor gave his deposition as to appellee's disability after the case was reopened. He testified that on the occasion of his last examination of appellee on September 26, 1952, he was suffering from severe pain in his arms, neck, shoulders and both legs; that he complained of weakness in both legs; and that he was then walking on crutches. He was also of the opinion that appellee's condition had grown progressively worse since he had first examined him immediately following the accident. He further stated that appellee was 100 per cent permanently and totally disabled at the time he reopened his case.

Appellee, his wife and two other lay witnesses also testified that the claimant had gradually grown worse since his injury and that, as a result of the accident, he had been rendered wholly incapacitated from the standpoint of being able to do any manual labor. Appellant introduced no evidence at the hearing.

■ We are unable to concur in the Board's finding of fact that fraud was practiced upon it by appellant. The language of the opinion to the effect that appellant knew prior to the time of the final hearing that appellee was more than 50 per cent partially and permanently disabled is not supported by any evidence. On the other hand, it was definitely established that appellant settled with appellee on October 26, 1951, on the basis of Doctor Holtzclaw's written statement made to it then that appellee was only "50 per cent totally and permanently disabled." Furthermore, appellee did not allege or rely upon fraud when he moved to reopen his case. Crummies Creek Coal Co. v. Hensley, 284 Ky. 243, 144 S.W. 2d 206, and Ray v. Black Mountain Corporation, 254 Ky. 800, 72 S.W.2d 477, both of which were cited by the Board in the opinion to support its assertion that fraud had been practiced on it, were cases where both parties were aware that the settlement agreement did not accurately present the claimant's disability. Although in the case at bar appellee stated without reservation in his deposition that he had been totally and permanently disabled ever since his injury, we reiterate that there is nothing in the record to indicate appellant had knowledge of the fact that, prior to the time of the final hearing, appellee was more than 50 per cent partially and permanently disabled. Therefore, we conclude appellant's second contention is well taken.

■ We are drawn to the conclusion, however, that appellee is nevertheless entitled to the maximum compensation benefits allowed him by the Board. A careful analysis of the testimony of Doctor Holtzclaw convinces us that, as of the date of the accident, this physician thought appellee's injuries incapacitated him only to the extent of 50 per cent. This is shown by this statement in his first communication to appellant: "I have done a fairly complete workup on him which will be forwarded if necessary, however, in my opinion the evaluation of his disability would be at least 50 per cent permanent and total disability." After the lapse of about a year, as his deposition shows, six examinations of appellee from time to time brought home to Doctor Holtzclaw the nature and extent of appellee's injuries and forced him to this conclusion at that time: "When he (appellee) was examined on September 26, 1952, (this was the last examination) I determined he was permanently and totally disabled." This is the only medical testimony adduced concerning appellant's disability on the occasion of his injury and when his case was thereafter reopened, and it clearly establishes a change of conditions within the meaning of KRS 342.125.

■ The Board reached a correct decision in this case even though its opinion was based upon a ground the evidence does not support. We have many times held that a proper order must nevertheless stand, if it can be sustained for any other sufficient reason shown in the record. We have pointed out that although the Board erroneously rested its award upon fraud, it could

have made, which the proof fully warranted, an award of 100 per cent disability founded upon change of conditions. Akins v. City of Covington, 265 Ky. 740, 97 S.W. 2d 588; Anderson v. City of Ludlow, 250 Ky. 204, 62 S.W.2d 785. It is our opinion that appellant's initial contention is without merit.

Wherefore, the judgment is affirmed.