**PATRICK CUDAHY FAMILY CO. v. BOWLES, Acting Price Adm'r.**

**No. 55.**

United States Emergency Court of Appeals.

Heard at Chicago Sept. 23, 1943.

Decided Nov. 2, 1943.

Writ of Certiorari Denied Jan. 17, 1944.

See 64 S.Ct. 485.

Jackson M. Bruce, of Milwaukee, Wis., for complainant.

Harry H. Schneider, George J. Burke, General Counsel, Thomas I. Emerson, Associate General Counsel, Nathaniel L. Nathanson, Assistant General Counsel, Sol M. Linowitz, Chief, Court Review Rent Branch, and Herbert H. Bent, all of the Office of Price Administration, Washington, D. C., for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

MAGRUDER, Judge.

The protest here was against an order denying a landlord's petition for adjustment of maximum rent, filed under one of the adjustment provisions of an applicable rent regulation. What we said in Armour & Co. v. Brown, Em.App.1943, 137 F.2d 233, 239, is applicable to this case: "A protest against an order denying an application for an adjustment does not open up for review the validity of the regulation itself, but only raises the question whether the Administrator was arbitrary and capricious in concluding that the applicant had failed to make out a case within the terms of the applicable adjustment provision."

Maximum Rent Regulation No. 35, covering housing accommodations in the Milwaukee defense-rental area, provides that for housing accommodations which were rented on March 1, 1942, the maximum rent shall be the rental prevailing on that date. In several exceptional cases a landlord is permitted to file a petition for adjustment to increase the maximum rent otherwise allowable. Section 5(a) (5) of the regulation, as amended by Supplementary Amendment No. 9, permits the filing of a petition for such an upward adjustment where: "There was in force on March 1, 1942, a written lease, for a term commencing on or prior to March 1, 1941, requiring a rent substantially lower than the rent generally prevailing in the Defense-Rental Area for comparable housing accommodations on March 1, 1942 * * *."

The question is whether complainant made out a case for adjustment under the foregoing provision.

On January 16, 1939, complainant executed a lease of Apartment No. 717-18 in Cudahy Tower Apartments, Milwaukee, Wisconsin, for a rental of $150 per month "for the term of Two (2) Years, beginning on the 1st day of May, 1939, and ending on the 30th day of April, 1941 * * *." The agreement further provided that "this lease shall stand, without notice from either party, renewed on identical terms for a like successive period unless either party shall at least sixty days before the expiration of the demised period notify the other party in writing to the contrary." Neither party having given the indicated notice, the tenant continued in possession beyond the expiration date of April 30, 1941, and was so in possession, under the agreement, on March 1, 1942.

Complainant's position is that the whole period of occupancy under the agreement comprised but a single "term" commencing May 1, 1939; hence, that there "was in force on March 1, 1942, a written lease, for a term commencing on or prior to March 1, 1941," etc. The Administrator contends that the term of the lease in force on the maximum rent date did not commence until May 1, 1941, and this was the ground for the denial of the protest.

We think that the Administrator was right, on a reasonable interpretation of the adjustment provision in question.

■ The original term ran from May 1, 1939, through April 30, 1941. A renewal of the lease for a further two-year period could be made only by mutual assent. In the original rental agreement executed January 16, 1939, the parties each agreed that such further assent would be evidenced by silence, i. e., by failure to give notice to the contrary at least sixty days before the expiration of the original demised period. When the last day for giving such notice expired, without either party having done so, they in effect bargained for an additional two-year term running from May 1, 1941, through April 30, 1943. We agree with the Administrator that the adjustment provision should have throughout the country a uniform interpretation conformable to the purposes of the rent regulation, irrespective of whether, under the law of a particular state, the effect of the renewal clause would be to create a new term or to continue the old within the meaning of a local statute of frauds or recording act. It is recognized, of course, that matters concerning the title and disposition of real estate are determined by the law of the jurisdiction in which such property is located; but here the matter at issue concerns the interpretation of a regulation issued by a federal administrative agency. Furthermore, it is to be noted that the agreement in the present case is not like that in Sheppard v. Rosenkrans, 1901, 109 Wis. 58, 85 N.W. 199, 83 Am.St.Rep. 886, cited by complainant, where the option to renew was a unilateral one exercisable by the tenant alone, the landlord being bound from the outset to allow the tenant to remain in possession for a further extended period if the tenant elected to do so. An agreement like that might well call for a different result under the adjustment provision now in question.

■ Complainant makes the alternative argument that it was intended by the adjustment provision "that if a landlord for a year prior to March 1, 1942 had been so bound by a rental agreement that he could not raise the rents in that period, and if the rent was therefore substantially less on March 1, 1942 than the then prevailing rents, he should be afforded relief." This might seem a more rational basis for the adjustment; but we are concerned now only with the adjustment provision as written. It is clear that the provision re-

lates to the date of the commencement of the term and not to the date of the execution of the lease. But even on the test suggested by complainant, it would not be entitled to relief. Under the agreement, March 1, 1941, was the last day on which the landlord could have given notice preventing the extension of the lease for a further two-year term. It could have given such notice at any time on March 1, 1941. The notice had to be given "at least sixty days before the expiration of the demised period." That includes the whole of the last day, April 30, 1941, for the demised period did not expire until the last split second of that day had ticked by. Hence, April 30, 1941, would have had to be included in calculating the sixty days. A notice given at any time on March 1, 1941, would have been at least sixty full days before the expiration of the demised period. Therefore the landlord was not for a year prior to March 1, 1942, so bound by a rental agreement that it could not raise the rent in that period. Complainant reads the renewal clause as though it required notice to be given at least sixty full days prior to April 30, 1941, which would make February 28, 1941, the last day on which notice could have been given. But that is not what the agreement says. We find nothing in the Wisconsin cases to indicate that the last day of the demised period is not to be counted under a renewal clause requiring notice a certain number of days "before the expiration of the demised period."

The complaint is dismissed.