**NATIONAL LABOR RELATIONS BOARD v. CLARA–VAL PACKING CO. et al.**

No. 12630.

United States Court of Appeals
Ninth Circuit.

Aug. 30, 1951.

George J. Bott, Gen. Counsel, N. L. R. B., David P. Findling, Asso. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Bernard Dunau, Duane Beeson and Isadore J. Gromfine, Attys., N. L. R. B., all of Washington, D. C., for petitioner.

I. B. Padway, San Jose, Cal., for respondent Cannery Warehousemen, etc.

Before: DENMAN, Chief Judge, and GOODMAN and BYRNE, District Judges.

DENMAN, Chief Judge. ·

This is a petition by the National Labor Relations Board pursuant to § 10(e) of the 'National Labor Relations Act, as amended, 29 U.S.C.A. §§ 151, et seq., 160(e) for enforcement of its order issued against respondents Clara-Val Packing Company (hereafter called Clara-Val) and the Cannery Warehousemen, Food Processors, Drivers and Helpers, Local Union No. 679, A.F.L. (hereafter called the Union).

Enforcement is resisted solely on the ground that the conduct claimed to constitute unfair labor practices was justified by a clause, later described, in a collective bargaining agreement adopted by the two respondents to govern the terms of employment at Clara-Val's plant.

The charges giving rise to the instant proceedings were filed by one Stiers, who, in the middle of June, 1948, was an employee of Clara-Val and a member of the Union. The Union learned that after her hours of duty at Clara-Val's plant Stiers was in the habit of performing work at the plant of Driscoll Strawberries, Inc. In so doing, Stiers crossed a picket line of the Union at the Driscoll plant in violation of that Union's rules.

The Union demanded that Clara-Val discharge Stiers pursuant to the Union security provisions of their contract. The demand was accompanied by a threat of picketing and work stoppage. Clara-Val promptly complied with the demand and discharged Stiers on June 24, 1948.

The Board held that a contract between the Union and Clara-Val providing for such a discharge had not continued to the time of Stiers' discharge and that the discharge was in violation of §§ 8(a) (1) and 8(a) (3) of the Act and that the Union had violated §§ 8(b) (2) and 8(b) (1) (A).

The contract in question had originally been entered into in 1941. It had been amended from time to time, the most recent amendment having been executed on May 20, 1947, effective March 1, 1947. The duration of the contract was provided for in the clauses set out commencing on page 3 of the Board's brief, the most important of which contained this language: "(a)

The exclusive collective bargaining relationship provided by this Agreement and effective from and after March 1st, 1947, shall *continue without expiration date until*" (emphasis supplied) terminated by written notice or modified in the manner hereafter considered. The agreement also refers to the "anniversary date" of the Agreement as being March 1st of each year and contains procedure for modification.

On March 1, 1948, the "anniversary date" of the contract, no notice of termination or modification was given by either Clara-Val or the Union. Thus matters stood in June, 1948, when the claimed unfair labor practices occurred.

The Board admits, or at least makes no contention to the contrary, that if the union-security provisions in the contract were valid in June, 1948, the conduct complained of was justified. The respondents, the Union and Clara-Val, admit, or at least make no contention to the contrary, that if the continuing clauses are invalid the petition for enforcement should be granted. The parties do not seem to disagree with the proposition that the validity or invalidity of the union-security provision is to be determined solely by answering the question: Was the contract "renewed or extended" on its anniversary date of March 1, 1948, within the meaning of Section 102 of the Act of June 23, 1947, 29 U.S.C.A. § 158 note?

Section 102 provides: "No provision of this title shall be deemed to make an unfair labor practice any act which was performed prior to the date of the enactment of this Act [June 23, 1947] which did not constitute an unfair labor practice prior thereto and the provisions of section 8(a)(3) and section 8(b)(2) of the National Labor Relations Act as amended by this title shall not make an unfair labor practice the performance of any obligation under a collective-bargaining agreement entered into prior to the date of the enactment of this Act, or (in the case of an agreement for a period of not more than one year) entered into on or after such date of enactment, but prior to the effective date [August 22, 1947] of this title, if the performance of such obligation would not have constituted an unfair labor practice under section 8(3) of the National Labor Relations Act prior to the effective date of this title *unless such agreement was renewed or extended subsequent thereto.*" (Emphasis supplied.)

To recapitulate the dates heretofore given: the amendments of the Act were passed on June 23, 1947, and became effective on August 22, 1947. The collective-bargaining agreement between Clara-Val and the Union was entered into on May 20, 1947, retroactive to March 1, 1947, and Stiers was discharged on June 24, 1948.

The Board held that the contract had been "renewed" within the meaning of Section 102 by the passing of what it terms the "automatic renewal" date of March 1, 1948.

We do not agree. Nowhere in the contract is there a provision for a renewal of any character. Nor did the parties perform any acts of renewal or modification. The pertinent provisions read:

"Section XV, Term of Agreement

"(a) The exclusive collective bargaining relationship provided by this Agreement and effective from and after March 1, 1947, *shall continue* without expiration date until:

"1. Terminated by written notice served by either party upon the other as provided in Paragraph (a) Section XII or in Paragraph (b) of this Section, or

"2. Terminated by written notice served by either party upon the other as provided in Section XVI (b)2.

"(b) The anniversary date of this Agreement shall be March 1st of each year. If either party desires to terminate the exclusive collective bargaining relationship and this Agreement on *any* anniversary date, written notice to such effect shall be served between February 16th and March 1st of the year then current.

"Section XVI, Procedure for Modification

"(a) In the event either party desires to modify any of the terms of this Agreement or to establish new or different terms or conditions, written notice specifying in ex-

act language the changes desired shall be served within the sixteen (16) day period December 16th to December 31st inclusive. The months of January and February following service of the above notice shall be devoted to negotiations and if the parties are in complete agreement all changes mutually agreed upon shall become effective on March 1st and *shall remain effective* for *not less* than twelve (12) months thereafter.

"(b) If any of the matters under negotiation are still in dispute on March 1st, either of the following actions may be taken:

"1. The parties may mutually agree upon an additional period or periods of negotiation and the changes finally agreed upon shall become effective on a mutually acceptable date and *shall remain effective* until *at least* the following March 1st.

"2. Either party by written notice on or *after March 1st may terminate* the collective bargaining relationship and this Agreement.

"(c) If, during the December 16th to December 31st period, neither party serves notice of a desire to modify any of the terms of this Agreement or to establish new or different terms or conditions, then this Agreement *shall continue* for an additional period of *at least* twelve (12) months after the next March 1st anniversary date." (Emphasis supplied.)

An agreement which "shall continue without expiration date" until terminated or modified by the act of the parties within a fixed period from its anniversary date is not terminated on its anniversary where the parties take no action. It continues. It is not renewed. Where no such action is taken the agreement necessarily must *"continue* for an additional period of at least twelve months after the next March 1st anniversary date."

The Board contends that it has established in prior cases before it that such a contract with no fixed period of its existence is "automatically renewed." None of its cited cases so hold. In the Matter of Mill B., 40 NLRB 346, 348, the contract provided "this agreement is for one year." In the Matter of Green Bay Drop Forge

Co., 57 NLRB 1417, 1419, the contract provided that it "shall remain in effect for one year and for renewal periods of one year thereafter" (emphasis supplied). Similarly in United States Pipe and Manufacturing Co., 78 NLRB 15, 16. In Groveton Papers Co., 52 NLRB 1256, 1257, the contract was expressly made a "year to year" contract. In each of the following cases the contract was for a specific period of a year and for "year to year" thereafter: Borg-Warner Corp., 58 NLRB 449, 450; Narragansett Electric Co., 64 NLRB 1492, 1493; Neon Products, Inc., 74 NLRB 766, 767; Manhattan Coil Corp., 79 NLRB 187, 189; North Range Mining Co., 47 NLRB 1306, 1307; Little Rock Mfg. Co., 80 NLRB 65.

In Patrick Cudahy Family Co. v. Bowles, Em.App., 138 F.2d 574, 575, the contract expressly provided for a *renewal*. It was for a definite two year period, to be renewed on identical terms for a like successive period.

All these cases were prior to the Taft-Hartley Act. Congress, if it had intended by that Act that no agreement should last longer than a year or other definite period without being subject to the Act, so could have made it clear. Indeed, the House bill 3020, in Section 102(d), provided such a definite period in the following language: "* * * the provisions of section 8(a) (3) of the new Act shall not make an unfair labor practice the performance within six months after the date of the enactment of the new Act of any obligation under a collective-bargaining contract entered into prior to the date of the enactment of this Act if the performance of such obligation would not have constituted an unfair labor practice under section 8(3) of the old Act." It was in the conference committee of the two houses that Section 102 attained its present form. Obviously, the extended language of that section as adopted contemplated that the relationship between the parties here was not to be disturbed any more than if the instant agreement had been for a definite term of five years.

It is decreed that the order of the Board is set aside in whole. 29 U.S.C.A. § 160(e).