NATIONAL LABOR RELATIONS BOARD v. INTERNATIONAL ASS'N OF HEAT & FROST INSULATORS & ASBESTOS WORKERS, LOCAL NO. 7, A.F.L.

No. 13139.

United States Court of Appeals
Ninth Circuit.

Oct. 13, 1952.

George J. Bott, Gen. Counsel, David P. Findling, A. Norman Somers, Asst. Gen. Counsel, Bernard Dunau and Henry Geller, Attys., N.L.R.B., Washington, D. C., Patrick H. Walker, Atty., N.L.R.B., Seattle, Wash., for petitioner.

L. Presley Gill, Seattle, Wash., for respondent.

Before HEALY, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

The Board instituted this proceeding to procure enforcement of its order requiring the respondent Union to cease and desist from enforcing a closed-shop provision of the contract herein described.

On June 30, 1943 the Seattle Construction Council, an organization of employers in the construction business, including Charles R. Brower & Co., entered into an agreement with Seattle, Washington, Building and Construction Trades Council, an association of construction labor organizations including the respondent Union, whereby it was agreed that the employers would "employ none other than members of the party of the second part [Trades Council]," as enumerated in the agreement. In this enumeration were "asbestos workers", the group represented by the respondent Union.

At various times between September, 1949 and February 8, 1950 the Union, insisting upon the closed-shop provisions of this contract, required Charles R. Brower & Co., here called the Company, to lay off or refuse to hire six employees named in the complaint. These employees had previously been engaged as asbestos workers doing insulation work for the Company. They were not permitted to join respondent Union but previously had employment in this field under written permits from the Union. At the time in question the Union refused to issue further permits and required the Company to lay these men off.

The Board concluded that the respondent Union had violated § 8(b) (2) and 8(b) (1) (A) of the Act, Title 29 U.S.C.A. § 158.[1] This was based upon the Board's finding that the closed shop agreement was invalid because, although it had been entered into before the amendments to the Act, yet it had been "renewed or extended" thereafter within the meaning of § 102.[2]

Considered apart from the closed-shop agreement mentioned, the conduct of the Union unquestionably was in violation of the above sections of the Act. There is also no question but that the operations of the Company were such as to affect commerce

1. "Rights of Employees. Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3).

"Unfair Labor Practices. Sec. 8(a). It shall be an unfair labor practice for an employer— * * * (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, * * * (The proviso permits certain union shop or maintenance of membership agreements). * * * (b) It shall be an unfair labor practice for a labor organization or its agents—(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: * * * (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) or to discriminate against

an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership". 29 U.S.C.A. §§ 157, 158.

2. "Sec. 102. No provision of this title shall be deemed to make an unfair labor practice any act which was performed prior to the date of the enactment of this Act which did not constitute an unfair labor practice prior thereto, and the provisions of section 8(a) (3) and section 8(b) (2) of the National Labor Relations Act as amended by this title shall not make an unfair labor practice the performance of any obligation under a collective-bargaining agreement entered into prior to the date of the enactment of this Act, or (in the case of an agreement for a period of not more than one year) entered into on or after such date of enactment, but prior to the effective date of this title, if the performance of such obligation would not have constituted an unfair labor practice under section 8(3) of the National Labor Relations Act prior to the effective date of this title unless such agreement was renewed or extended subsequent thereto." 29 U.S.C.A. § 158 note.

so as to confer jurisdiction on the Board to proceed in this matter. The only question which requires our attention is whether under the circumstances the closed-shop agreement was valid when the acts of discrimination occurred.

The agreement of June 30, 1943, which as previously stated, contained the closed-shop clause, remained in effect without any modification by any act of the parties to the date of the hearing before the trial examiner on September 6, 1950. Neither the Company nor the Union took any step, or did any act to renew or extend it. The Board, however, held that the discriminatory acts were not, within the provisions of § 102, in "the performance of any obligation under a collective-bargaining agreement entered into prior to the date of the enactment" of the amended Act, for the reason that the agreement between the Company and the Union was "renewed or extended" by operation of an "automatic renewal clause" contained in the agreement itself.

The agreement contained two paragraphs which the Board asserts brought about this automatic renewal. One of these paragraphs relates to an escalator or cost of living wage clause by which wages were to be determined for the period January 1, 1944 through January 1, 1947. It is as follows: "Paragraph 4 [escalator wage provision] of this contract shall remain in effect until January 1, 1948 unless notice is given 90 days prior to July 1, 1947 and *shall renew itself from year to year thereafter,*—Provided that wages shall be adjusted from time to time as provided for in Paragraph 4." (Emphasis supplied.) The duration clause relating to all other employment conditions specified in the contract is as follows: "All other conditions of this agreement shall take effect on July 1, 1943, and *continue in effect thereafter from year to year* until changed by the mutual agreement of the parties as provided herein. Proposed changes or modifications of this Agreement shall be made by either party giving notice thereof in writing to the other party at least 90 days before July 1, and such notice shall specify the provisions desired to be changed, and shall state the time and place at which negotiations may commence. The other party shall enter into negotiations not later than 30 days from the date of the receipt of said notice, after party has notified the other in writing of proposed modifications and changes in this Agreement. In the event no accord can be reached in the succeeding 60 days, arbitration as provided hereinafter shall be resorted to." (Emphasis supplied) This is the significant clause, as it is the one which refers to the duration of the closed-shop portion of the agreement.

The Board contends that the provision of the quoted clause that the agreement shall continue "from year to year" means that at the end of each year the agreement was automatically renewed and that such automatic renewal means that the agreement was "'renewed or extended'" within the meaning of § 102 at a date subsequent to the amendment of the Act.

In National Labor Relations Board v. Clara-Val Packing Co., 9 Cir., 191 F.2d 556, the Board sought a similar construction with respect to a union agreement which provided that its exclusive collective bargaining relationship "shall continue without expiration date" until terminated by written notice served by either party upon the other, or until modified in a manner specified in the contract. This court held that, 191 F.2d at page 559: "An agreement which 'shall continue without expiration date' until terminated or modified by the act of the parties within a fixed period from its anniversary date is not terminated on its anniversary where the parties take no action. It continues. It is not renewed." The Board urged the authority of a number of its own decisions dealing with agreements which recited that they were to continue for a period of a year and from "year to year" thereafter. The Board had described the agreements in those cases as having been "automatically renewed". The court did not express any opinion as to the correctness of these decisions. It simply pointed out that the decisions relied upon by the Board dealt with contracts whose language

was not the same as that in the Clara-Val agreement.[3]

The respondent argues that the facts here even more emphatically than those in the Clara-Val case demonstrate the continued validity of the closed-shop agreement. It contends that by express terms the agreement is to continue in effect from year to year until changed by mutual agreement; that a proposal for change when made by either party if not agreed upon shall be submitted to arbitration. The provisions for arbitration were that the umpires' decision was to be "final and binding upon both parties." Hence, the argument continues, the contractual relationship must go on regardless of what either party may do, because of this provision for compulsory arbitration.

We find it unnecessary to express an opinion upon this argument of respondent, for we think that there is a fundamental infirmity in the position taken by the Board. It is true that the agreement's reference to its continuing in effect "from year to year" is similar to the phraseology dealt with in the Board's decisions above referred to. None of those decisions had anything to do with § 102 or the meaning of the words "renewed or extended" as used therein.[4] We feel that they furnish no assistance to this court in determining what Congress had in mind in its use of these terms. To say that this particular contract was "automatically renewed" because of the fact that it uses the words "continue in effect thereafter from year to year" does not solve the problem now present. The inquiry is whether the renewal or extension mentioned in § 102 was intended to refer to a renewal or extension by some act of the parties. Where, as here, in the absence of

notice or other act of termination the agreement will by its terms continue indefinitely, is it the kind of contract which Congress contemplated would be excepted under the terms of § 102?

Whoever drafted the Clara-Val agreement used the words: "shall continue without expiration date". The draftsman of the present agreement made it state that it should "continue in effect thereafter from year to year". Each says that in the absence of some action designed to terminate or modify the amendment, it would continue indefinitely.

The Board asserts that "Congress intended to defer the invalidity of a closed-shop agreement only for the balance of its unexpired term, and the expiration occurs when the period prescribed by the contract for the negotiation of changes arises." As we understand this contention, it is that the Congressional purpose was to protect the existing closed-shop agreement only until that date on which one of the parties might demand a change; that when that date arrived the mere inaction of the parties,—their failure to move for a change, results in an "automatic renewal" and that this is the sort of renewal referred to in § 102.

It is our opinion that such a contention proves too much and is foreclosed by the decision in the Clara-Val case. Under the agreement in that case the exclusive collective-bargaining relationship was to "continue without expiration date until: 1. Terminated by written notice served by either party upon the other as provided in Paragraph (b) of this Section, * * *. (b) [T]he anniversary date of this Agreement shall be March 1st of each year. If either party desires to terminate the exclusive * * * bargaining relationship and

---

3. When this court, in the Clara-Val case, was presented with the argument that the Board's decisions relating to contracts which contained provisions for their continuance "from year to year" were in point, and controlling, it found it unnecessary to pass upon the correctness of those decisions, for the contract before it was not couched in identical language. In the case now before us, the words "from year to year" were used, and in consequence we must now de-

termine what the court previously was able to avoid.

4. The case of Patrick Cudahy Family Co. v. Bowles, 138 F.2d 574, decided by the Emergency Court, and cited in the Clara-Val case, does not help here. It dealt with the question of whether a certain lease agreement provided for one or two terms. The court had to decide as to the meaning of the word "term", under a certain maximum rent regulation.

this Agreement on any anniversary date, written notice to such effect shall be served between February 16th and March 1st of the year then current." If the Board's argument that Congress intended to defer the invalidity of a closed shop agreement only to that period when one of the parties had the power to terminate it has any validity, it would have application to the facts of the Clara-Val case as fully as in the present circumstances.

As indicated, either party could have terminated the Clara-Val agreement by notice preceding March 1st of any year. Bearing that in mind, we must decide whether as a matter of substance there is any real difference between the Clara-Val contract and the one here presented to us. In each case the contract would continue indefinitely if neither party took any action to bring it to a conclusion. As a matter of substance we find it impossible to conclude that it made any difference whether the words accomplishing this result say that it shall "continue without expiration date" or it shall "continue in effect thereafter from year to year". The duration clause relating to the escalator wage provision, that it "shall renew itself from year to year thereafter" is not substantially different. However that paragraph related to the wage provision, and not to the closed shop clause. It is not material here.

Whether the agreement in question was "renewed or extended" within the meaning of § 102, cannot be determined merely by calling the phraseology in question an "automatic renewal clause". The purpose of Congress was clearly to permit the enforcement of closed-shop agreements under existing contracts. But the parties to such an agreement could not prolong the protection which it furnished by renewing or extending it. We think this refers to a renewal or extension by some act of the parties. The very wording of the last clause of § 102—"unless such agreement was renewed or extended subsequent thereto"—suggests that it refers to some subsequent act. We do not think Congress intended to make the section's protection turn upon any variation in phraseology whose differences are as lacking in substance as those presented here.

The agreement here before us, like that in the Clara-Val case, had not terminated. No action was required to keep it in effect. The contract continued, and it was not renewed within the meaning of § 102. Accordingly, the discriminatory action of the Union was not an unfair labor practice.

The order of the Board is set aside.