## Bell & Terry, &c. *vs.* Kellar.

### APPEAL FROM MERCER CIRCUIT.

Judge Marshall delivered the opinion of the court.

Chancery.

Case 13.

December 23.

1. A *feme covert* having a separate estate, may charge it by executing a note or other evidence of debt or responsibility. Though she may not charge herself personally, she may charge her separate estate. and the execution of a note, or indorsing a bill of exchange, is evidence of her intention to charge her separate estate, where there is no prohibition so to charge the separate estate, in the deed creating it.

2. To render a guarantor responsible upon his undertaking, it is necessary that he have notice that his guaranty is accepted, and in case of notes protested, notice must be duly given of the protest.

3. If a *feme covert* having a separate estate, indorse a bill of exchange, though not intending to charge her separate estate, yet as it was indorsed to give the bill credit, and as it must be presumed that the indorsement had that effect, her separate estate will be liable.

4. If a *feme covert* having a separate estate, make or indorse a note, the presumption is that it was the intention, and the effect is, to charge the separate estate.

In July, 1848, Mrs. Catharine Kellar, then the wife of Samuel D. Kellar, and having a separate estate in lands, slaves, &c., held in trust for her during life, and for her children after her death, executed, together with one of her sons, Henry S. Kellar, the following written guaranty :

BELL & TERRY,
&C.
*vs.*
KELLAR.

"MERCER COUNTY, KY., JULY 21, 1848.

" *Messrs. Bell & Terry, Louisille, Ky:* GENTLEMEN—
" We will stand security to you for Mr. S. D. Kellar
" for any amount you may have or hereafter credit
" him for; and bind ourselves collectively and indi-
" vidually to pay, in the event he may die and not
" have paid you what he may owe you."

In May, 1850, James V. Kellar, also one of
the sons of Catharine Kellar, drew, or signed as
drawer, a bill of exchange for $308, payable at four
months, addressed to S. D. Kellar, and accepted by
him, payable at the Danville branch of the Bank of
Kentucky, which was indorsed by Bell & Terry for
the accommodation of the acceptor, and was after-
wards paid by them upon protest for non-payment,
the said S. D. Kellar having received the proceeds in
the first instance.

In July, 1850, a second bill was drawn signed by
Henry D. Kellar and James V. Kellar upon S. D.
Kellar for the sum of $513, payable in four months
to Catharine Kellar, and by her indorsed, and which
was accepted by S. D. Kellar payable at the Danville
Branch, &c. This bill was made for the benefit of
S. D. Kellar, and Bell & Terry paid the amount to
him and thus became the holders. In August, 1850,
before either of these bills had matured, S. D. Kellar
died insolvent; and each of said bills remaining un-
paid as to him, Bell & Terry as the holders thereof,
filed their bill on the 26th of October, 1850, against
the trustees of the separate estate, and all of the
beneficiaries, praying that the interest of Catharine
Kellar, and of James V. and Henry D. Kellar might
be subjected to the payment of the two bills of ex-
change above set forth. The foregoing facts are al-
leged in the bill, which also alleges that the com-
plainants had given credit to S. D. Kellar in the
transactions upon said bills, upon the faith of the guar-
anty above stated, and of the separate estate, and
that due notice had been given of each of the protests
for non-payment.

On the same day on which the bill of Bell & Terry was filed, a bill was filed by D. C. Hyeronimus, setting up a judgment at law against S. D. Kellar and Catharine Kellar, with an execution thereon returned no property, &c., and praying for its satisfaction out of the trust estate of Mrs. Kellar. The two suits were consolidated. And the trustee and Mrs. Kellar answered, resisting the subjection of her estate to these debts, and especially to the claims of Bell & Terry—the trustee of the land, on the ground that she could not charge it under the deed, and she on the ground that she never intended to charge any part of her separate estate, and did not understand that she was doing it. She also denies that the credit was given to her husband on the faith of the guaranty, or of her separate estate. The trustee of the slaves was proceeded against as a non-resident by warning order and traverse. James V. and Henry D. Kellar did not answer.

On the hearing the court dismissed both bills absolutely as to Mrs. Kellar, and without prejudice as to the other defendants. The two cases are brought up on one record by appeal.

It must be assumed as the settled doctrine of a court of equity, established by many decisions of other courts, and recognized by this court, that a *feme covert* having a separate estate may charge it by the execution of notes or other evidences of debt or responsibility, on the ground that as she could not charge herself personally, the execution of such writing must be regarded as evincing an intention to charge her estate. And as neither of the deeds creating the separate estate in this case contains a prohibition against her so charging it, we are of opinion that the writings relied on by these complainants do constitute such charge, by implication, upon her interest in the estate conveyed to her separate use.

Bell & Terry are not, however, entitled to recover against any of the parties upon the guaranty, because they neither allege nor prove any acceptance of the

1. A *feme covert* having a separate estate, may charge it by executing a note or other evidence of debt or responsibility. Though she may not charge herself personally, she may charge her separate estate, and the execution of a note, or indorsing a bill of exchange, is evidence of her intention to charge her separate estate, where there is no prohibition so to charge the separate estate, in the deed creating it.

2. To render a guarantor responsible upon his undertak-

BELL & TERRY,
&c.
*vs.*
KELLAR.

ing, it is necessary that he have notice that his guaranty is accepted, and in case of notes protested, notice must be duly given of the protest.

guaranty before the date of the first of the two bills of exchange, which was nearly two years after it had been given; nor any notice of such acceptance until after the death of S. D. Kellar, and after the first bill had matured; and the answer denies that credit was given on the faith of the guaranty. (*See Kincheloe* v. *Holmes, &c.* 7 *B. Monroe,* 5, *and cases there cited.*)—We are also inclined to the opinion that the guaranty does not embrace the indorsement of a bill for the accommodation of S. D. Kellar. Then, as to the first bill to which Mrs. Kellar was no party, there was no ground for coming into a court of equity, the remedy against James V. Kellar, the drawer of that bill, being purely legal, and his interest in the estate after the death of his mother being a vested remainder and perfectly accessible to an execution at law. Nor was the aid of a court of equity necessary or even useful in discriminating his interest, as it could not be now divided, but must be sold at law or in equity as an aliquot part of the estate in remainder. As to this first bill of exchange then, the dismissal of the bill absolutely as against Mrs. Kellar, and without prejudice against the other parties, cannot be complained of. And as Hyeronimus had a judgment against Mrs. Kellar, for whose use for life the property conveyed in trust was held, and as upon the death of her husband this use ceased to be separate property, it was subject to execution against her by virtue of the thirteenth section of the act of 1796, (*Stat. Law,* 443,) and there was no necessity for applying to a court of equity to subject it. But as the act of 1821 and 1828 authorizing the judgment creditor, with a return of no property, to proceed in equity to subject any equitable or legal interest of his debtor, therefore this bill should not have been dismissed, but the relief prayed for should have been granted.

With respect to so much of the claim of Bell & Terry as grows out of the second bill of exchange, it must be assumed upon the bill and answer that J. V. and H. D. Kellar, the drawers, and Catharine Kellar

3. If a *feme covert* having a separate estate, indorse a bill

the indorser of that bill, received due notice of the protest for non-payment, or at least the holder took the proper steps for giving notice, there being no denial of the allegations on that subject. And although it may be that Mrs. Kellar, in making that indorsement did not understand that it would, or actually intend that it should, impose a charge upon her separate estate, yet as she must have indorsed it for the purpose of giving credit to it, and as it must be presumed that it was negotiated and thus put into circulation in part at least on the faith of her credit and responsibility, it would be a violation of good faith for her now to withhold the only means which she then had, or now has, for meeting this responsibility, on the ground that she did not know that those means would be affected by her indorsement. It does not appear that any fraud was practised upon her in procuring her indorsement. And although it be assumed that she indorsed the bill at the request of her husband, and in the confidence that no responsibility would in fact devolve upon her or her estate, this is but the common case of accommodation indorsers. Her confidence in her husband furnishes no ground for denying the responsibility of her estate to those who looked to it, or had a right to look to it, in taking the bill.

The indorsement of a bill of exchange is not a general engagement, such as is referred to under that designation, in the case of *Coleman* v. *Woolley's executor*, 10 *B. Monroe*, 321, cited in argument, and which it is there said, would not in general suffice to create a charge upon her separate estate if she and her husband be living together. It is a specific engagement which must be referred to her estate, or it is not only nugatory but deceptive. If she have no separate estate, then as she cannot bind herself personally, whoever trusts to her indorsement, must abide the consequences of his folly. But if she has a separate estate, and does any specific act which directly involves and pledges her credit, it must be referred to her sepa-

of exchange, though not intending to charge her separate estate, yet as it was indorsed to give the bill credit, and as it must be presumed that the indorsement had that effect, her separate estate will be liable.

4. If a *feme covert* having a separate estate, make or indorse a note, the presumption is that it was the intention, and the effect is, to charge the separate estate.

BELL & TERRY,
&c.
vs.
KELLAR.

rate estate, which she can bind, and on which alone her credit rests. And such act must be considered as implying a charge upon her estate.

In *Jarman, &c.* v. *Wilkerson*, 7 *B. Monroe*, 293, the doctrine of the British chancery on this subject is stated, and a case is cited (3 *Mad. Chy. Rep.* 387–8,) in which a security executed by the wife was held to be an appointment *pro tanto*, and her separate estate was subjected to the payment of a bill exchange drawn by her. And her indorsement of a bill must be equally effectual.

It follows, that in our opinion the separate estate of Mrs. Kellar was made liable by her indorsement of the bill for $513. And as this liability could not have been enforced in an action at law, even after the death of her husband, but could only be enforced in equity, the court should have granted relief as to this part of the demand; and having jurisdiction as to Mrs. Kellar's interest it should have disposed of the claim as against James V. and Henry D. Kellar also.

Wherefore the decree, so far as it dismisses and rejects the claim of Bell & Terry upon the bill of exchange for $308 is affirmed; but so far as it dismisses their bill and demand upon the bill of exchange for $513, and so far as it dismisses the bill of Hyeronimus, the decree is reversed and the cause remanded for a decree in conformity with this opinion.

*Hardin* and *Thompson*, for appellants; *Haggin* and *Draffin*, for appellees.