## L. C. Powers & Sons v. J. E. Brogdon Sheet Metal Works.

(Decided October 15, 1929.)

N. R. PATTERSON for appellants.

LOW & BRYANT for appellee.

Opinion of the Court by Judge Willis—Affirming.

L. C. Powers & Sons are general contractors engaged in business in Pineville, Ky. They had a contract with the board of education of the city of Middlesboro to construct a new school building according to plans and specifications, including the equipment of the building with a heating plant. J. E. Brodgon Sheet Metal Works is engaged in the business of installing furnaces and other heating apparatus. L. C. Powers & Sons made a contract with Brogdon Sheet Metal Works, under which a furnace was installed in the Middlesboro school building at a cost of $600, which was paid. The furnace was too small, and the board of education called upon the principal contractor to make it good. A new contract was negotiated with Brodgon Sheet Metal Works to install a new furnace

at a cost of $800. After the second contract was completed, but before the price was paid, L. C. Powers & Sons instituted this action to recover from J. E. Brogdon Sheet Metal Works the price paid for the furnace under the first contract. The defendant filed an answer and counterclaim, denying the allegations on which liability was asserted against it, and seeking to recover the sum of $800 agreed to be paid for the second furnace. The case was tried by the court without the intervention of a jury, and, at the request of the parties, a separation of the findings of law and fact was made substantially as follows:

"The plaintiffs contracted with the board of education of the city of Middlesboro to construct a school building in the City of Middlesboro. Under the terms of the contract the plaintiffs were bound to install a hot-air furnace to heat the building. The plaintiffs requested the defendant to make prices upon a hot-air furnace, including the installation thereof. The defendant examined the building in which the furnace was to be installed, with a view to estimating the cost of installing a heating plant of sufficient capacity to heat the building, such as it could and would guarantee to last for a definite period, and after this examination it informed the plaintiffs that it could not furnish such a plant for less than $1,400. The plaintiffs refused to purchase a plant at such price, stating that they could not afford to pay that much, or more than about $600, for one. The defendant informed the plaintiffs that it would sell plaintiffs and install a heating plant at the price of $600, but that such a plant would not be adequate, and would not last, and that they would not guarantee it. The plaintiffs accepted said proposition and thereupon the plaintiffs and defendant entered into the following contract, which was signed by both parties:

" 'For the sum of six hundred dollars ($600.00) we agree to do the following for you at school building at Middlesboro, Ky., East End School of Middlesboro, Ky., to furnish and install one No. 54-35 Torrid Zone furnace. Casing to be built by purchaser. All holes for pipe to be cut by purchaser. All work to be done in a mechanical and workmanlike manner. Satisfaction guaranteed. This price shall carry a

two per cent. discount (2%) on any amount paid on delivery of furnace. This job to be done according to plans and specifications.'

"The defendant installed the plant mentioned in the contract, and the plaintiffs paid for it. The furnace heated the building satisfactorily during the moderate weather in the fall and winter of 1927, but during an exceptionally cold spell of weather, in order to heat the building comfortably, it was necessary to overheat the furnace, and in the latter part of December such large holes were burned in it that it could not be repaired.

"The officers of the board of education notified the plaintiffs of the fact, and demanded that they put in another plant of sufficient capacity to adequately heat the building, and the plaintiffs took the matter up with the defendant and insisted that it was bound under its contract to install another plant at its own expense and demanded that it do so. The defendant denied that it was its duty to furnish another plant and refused to do so. The plaintiffs thereupon entered into the following contract, which was signed by both parties:

" 'For the sum not to exceed eight hundred dollars ($800.00) we hereby agree to furnish and install in a twin or battery setting two Torrid Zone furnaces Nos. 54-35 and 60-35. It is understood that the purchaser is to do all brickwork, inclusive of taking down the old brick casing and replacing the new according to our plans and specifications. We hereby agree to install these furnaces in a mechanical and workmanlike manner and to issue a ten-year guarantee on the life of the furnaces, which is given by the Lennox Furnace Company of Syracuse, N. Y.'

"The court finds as a matter of law on the facts that the plaintiffs are not entitled to recover any sum on their petition, and that the same should be dismissed, and that the defendant is entitled to recover the sum sued for in its counterclaim, to wit, $800, with interest from March 1, 1928, and its cost."
From that judgment the plaintiffs appeal.

It is not contended that the court's finding of fact is not fully supported by the evidence, but it is contended that the contract was in writing, and required the appellee to install a furnace in accordance with the plans and

specifications of the board of education. The specifications required that the building should be heated with hot-air furnace of a brick set type and to be of ample capacity to heat the building to 70 degrees when the thermometer was 10 degrees below zero. It further required the work to be done in a mechanical and workmanlike manner. The only trouble with the first furnace was lack of capacity. It was so small that, when fired sufficiently to heat the building, it would overheat the furnace. When the larger furnace was put in, no trouble was encountered, although it was exactly like the first and constructed in the same manner, except it was composed of two units. The appellants' position is thus succinctly stated in their brief:

> "Of course, as stated, much that they accuse Powers of he denies, and much that he accuses them of they deny, but we are not risking this case on the idea that the lower court rendered a judgment wholly inconsistent with the evidence; we are not claiming even that we had a preponderance of evidence; we are making but one claim, and that is that by a written contract the appellees agreed to do a certain thing in a certain way, according to certain plans and specifications, and that according to their own statement they did not do that, but carried on the work in a manner and way that they knew did not measure up to what they had agreed to do."

Undoubtedly a written contract, without ambiguity, must be performed in accordance with its terms, and oral evidence is not admissible to vary or contradict it. But the principle has no application to the situation presented by this record. The very furnace called for by the contract was installed and accepted. It proved inadequate, but there was no warranty or representation that it would be sufficient to heat the building. On the contrary, the vital basis of the defense was that plaintiffs were advised of the probable insufficiency of the first furnace and accepted it at their own risk. Since the only trouble with the installation was the inadequacy of the type of furnace selected, it was proper to show that the plaintiffs, with knowledge of that fact, consented for that particular furnace to be installed. A party to a contract may not complain of that to which he has consented, and the finding of the court from the evidence sustained that defense.

It is unnecessary to determine the effect of the subsequent agreement on the respective rights of the parties under the first contract, since we concur with the circuit court in its conclusion of law on the facts found that the plaintiffs manifested no right to a recovery.

The judgment is affirmed.