## Distillery Rectifying & Wine Workers International Union Of America et al. v. Brown-Forman Distillers Corporation.

June 22, 1948.

Rehearing denied October 19, 1948.

Homer Parrant, Jr. for appellants.

Ogden, Tarrant, Galphin & Street for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

On March 18, 1948, appellee, plaintiff below, filed petition asking a declaration of rights of parties. It is engaged in the distilling of alcoholic beverages, and in its petition, drawn in conformity with Sec. 639a—1 et seq., Civil Code of Practice, it alleged that the Union was and is the bargaining representative for employees of appellee who were members of the Union. On May 1, 1945, appellee entered into written agreement, known as the "basic contract," with the Union, relative to working conditions and wages for employees of appellee who belonged to the Union. This basic agreement and amendments cover about 24 pages of the pleading and contains a classification of employees and the wage scale, and working terms. However, the question here calls for the construction of one section of the contract and an amendment thereto. Article 12 of the original agreement in part provided: "This agreement shall be effective and shall remain in full force and effect from the date of its execution, May 1, 1945 to May 1, 1946, and during each year thereafter unless 90 days notice in writing is given by either party hereto prior to the expiration date. * * *"

On or about May 1, 1946, the original contract was amended in part as follows: "That the agreement entered into on May 1, 1945, shall be executed in its entirety, excluding schedule 'A' for a period of two more years ending April 30, 1948."

The pleading states that an actual controversy exists between parties "as to whether the basic contract has been automatically extended for another year because of the failure of the Union to give 90 days written notice prior to April 30, 1948, of intention to terminate. The Union contends that the basic contract as amended is not subject to the automatic renewal provision, hence

the contract will expire April 30, 1948. The employer contends that on January 31, 1948, no 90 days' notice. having been given by either party, the contract automatically renewed itself for a period of one year in accordance with the words "and during each year thereafter unless the 90 days' notice be given in writing."

The Union in answer alleged that the basic contract of May 1, 1945, was prepared by the defendants and the contract of May 1, 1946 by plaintiff; that "they" orally notified plaintiff more than 90 days before April 30, 1948 that they desired to terminate the contract. A reply alleged that the two contracts were prepared jointly by representatives of the two parties, and denied oral notice.

After completion of the pleadings defendants "offered to introduce evidence" to substantiate the allegations of their answer, the court sustaining plaintiffs' objection to the proposal. The chancellor then expressed the opinion that the May 1, 1946 amendment had the effect of leaving in the agreement the provision to the effect that unless terminated by one party or the other by 90 days' notice in writing prior to the expiration date of the contract as amended, the contract was automatically extended for an additional year from May 1, 1948.

The court expressed the opinion that defendants' "letter of February 6, 1948, to plaintiff is evidence of defendants construction of the contract to be the same as the court's construction thereof." Judgment in accord with the opinion was entered.

The letters are incorporated in the petition without objection. The first dated February 6, 1948, reads: "This will serve to officially advise that changes are desired in the existing agreement by and between your company and this Union affecting the employees of your company who are members of our affiliated Local No. 39, which agreement has an anniversary date of May 1, 1948. In the near future we shall have the proposed changes prepared, at which time we shall suggest a date which can be undoubtedly worked out to the convenience of all concerned."

On February 13, 1948, appellee replied:

"On February 9, I received your letter stating that

changes were desired by Local No. 39, in our contract with that Local dated May 1, 1945, as amended on April 30, 1946. You suggest that negotiations with respect to a modification be started at an early date.

"No doubt you have overlooked the fact that the contract referred to provides that it is to remain in full force through each successive year thereafter unless notice to the contrary is given in writing by either party 90 days prior to any expiration date. We gave no notice as required by the contract and we received no notice, either written or verbal from Local No. 39, until the receipt of your letter of February 6, 1948. Since the next expiration date is May 1, 1948, it is obvious that no notice such as required by the contract was given by either party, so that the contract remains in effect automatically until at least May 1, 1949.

"Since the contract has been automatically renewed for an additional year there is no occasion for bargaining procedure. This is especially true since the employees will be taken care of under the terms of the contract because it provides for an automatic wage increase when any three distilleries in the Louisville area have granted increases above the scale paid by us. The employees will be benefited and not penalized by the continuation of the contract in its present form."

Before reaching the main question we shall take up the contentions of appellant that the court erred in not allowing defendants to introduce testimony to show that the basic contract was prepared by the Unions, and the amendment by the employer. (2) That oral notice of purpose to terminate was given more than 90 days prior to May 1, 1948; (3) that its letter of February 6 constituted notice, and a substantial compliance with the requirement of 90 days notice.

On the last point it is difficult to see how the letter from the Union could be construed as expressing desire or intention of terminating the contract. If the purpose in mind was to terminate the contract it was concealed, and had the purpose been divulged at a later meeting it would have been much less than the 90 days requirement. If construed as a notice it was several days short of the requirement. Since we take this view it is hardly necessary to discuss the question as to whether or not it

amounted to "substantial compliance," nor the question on this point as to whether time of notice was of the essence of the contract, which as pointed out in appellants' brief is a question to be viewed from the standpoint of the parties as gathered from the contract involved, under the rule that unless the intention to make time of the essence is evidenced by expression, or implication, it may not be so regarded. Rogers Bros. Coal Co. v. Day, 222 Ky. 443, 1 S. W. 2d 540, cited by appellants. While not expressed in exact words, it is to be gathered without difficulty that by strong implication the requirement of 90 days written notice was essential, because termination or continuation depended upon the required notice. Appellees by the silence of appellants with regard to a purpose to terminate the contract had the right to conclude that when the last day for written notice had passed, appellants had assented to the automatic renewal for another year. Patrick Cudahy Family Co. v. Bowles, Em. App., 138 F. 2d 574.

Appellant's contention that the court erred in refusing to allow them to introduce oral evidence to show that the contracts were drawn as stated above, is not of merit. It is argued that had the court allowed such parol testimony the court would have been compelled to apply the rule that any ambiguity in the contracts should be construed most strongly against the author. If this rule were applied it would operate against the employer as to the amendment, but against the Union as to the basic contract which provided for written notice, and automatic extension.

The solution of the last question depends upon whether or not there exists such ambiguity when the two writings are considered together. We do not think there is such ambiguity as would allow oral testimony. In L. C. Powers & Sons v. Brogdon S. M. Wks., 231 Ky. 103, 21 S. W. 2d 131, 132, we said: "A written contract, without ambiguity, must be performed in accordance with its terms, and oral evidence is not admissible to vary or contradict it." There was here, as appeared in Dawson v. Dawson, 226 Ky. 750, 11 S. W. 2d 933, 935, "no pleading or proof that any part of the contract was omitted from the writing by fraud or mistake, and the writing being couched in ordinary words, their meaning and effect must be determined from the writing.

Parol proof is never competent to establish the meaning of a writing where it is expressed in ordinary unambiguous language. * * * This cannot be done, except upon allegations of proof of fraud or mistake.'' John S. Noel Co. v. Theobald, et al, 217 Ky. 28, 288 S. W. 1031. To the same effect see Bryant, et al. v. Fowler-Comer Co., 252 Ky. 466, 67 S. W. 2d 700, 706, and Pieck v. Carran, 271 Ky. 32, 111 S. W. 2d 440.

If the contract was automatically renewed or extended by the terms of the amendment, then notice neither oral nor written would have had the effect of terminating the contract. Patrick Cudahy Family Co. v. Bowles, supra. Still another reason for sustaining the objection is that there appeared nothing more in the record than the statement upon submission, or after ''coming on for trial,'' that appellants merely offered to introduce evidence on the points above mentioned. No witnesses were produced; no depositions tendered nor avowals made as to what witnesses would or might say.

From what has been said up to this point it seems unnecessary to say a great deal as to what in the outset we suggested was the main question, i. e., construction and intended meaning and effect of the words ''extended in its entirety excluding schedule A.'' The words themselves of no uncertain meaning, were no doubt thoroughly understood by the parties, regardless of whether one party drew the basic, and another party drew the amending contract. It would have been a simple matter to have objected and insisted on elimination of the extending language. There is no claim that the amendment was not read, or fully understood by appellants. They say that the original contract was drawn by them. This contained the provision for automatic renewal during each year thereafter, unless the required notice be given by either party, and this provision was not eliminated in the amendment extending the contract ''in its entirety for two more years.'' We note from the record that on October 8, 1946, the contract was again amended in certain respects which in brief it is said are not material here; this would tend to indicate that the letter of February 6, 1948, was not meant to be a notice of termination, but would be of influence in assuming that appellants expected to stand by the automatic renewal provi-

sion, or to extend the basic contract in its entirety except as to schedule A.

It is of bearing to note that appellants' letter of February 6, in referring to the basic contract used the language "which agreement has an anniversary date of May 1, 1948," and did not refer to it as a date of expiration, indicating that it had a notion that the renewal extension was of effect. That automatic renewal provisions in labor contracts are recognized as binding on both parties to such contracts, and that notice is essential, is shown by reference to Borg-Warner Corp. 56 N. L. R. B. 105. In discussing such provisions the Board said: "Provisions in collective bargaining agreements for automatic renewal in the absence of 30 or 50 days notice to terminate, given prior to the anniversary date, are conventional clauses * * * and should employees fail to give notice of a desire to change bargaining agents before such clauses take effect, they, as well as their employer, are bound by the, automatic renewal of the contract."

After careful consideration of the record and briefs of counsel we cannot escape the conclusion that the amendment extended in its entirety the basic contract, except schedule A; that was the chancellor's construction, and from the record we cannot see otherwise than that it was the construction placed upon the two documents, not only by appellee but by appellant. The judgment must be and is affirmed.