**FARMERS BANK AND TRUST COMPANY OF GEORGETOWN, KENTUCKY, Appellant,**

v.

**WILLMOTT HARDWOODS, INC., et al., Appellee.**

No. 2003–SC–0455–DG.

Supreme Court of Kentucky.

Aug. 25, 2005.

Robert W. Kellerman, William L. Montague, J. Mel Camenisch, Jr., Stoll, Keenon & Park, LLP, Lexington, Counsel for Appellant.

Stephen M. O'Brien III, Savage Garmer Elliott & O'Brien, PLLC, Lexington, Counsel for Appellee.

GRAVES, Justice.

This case involves various claims against Farmers Bank and Trust Company (hereinafter "Farmers"), Appellant, for a breach of promise to make a loan. The Scott Circuit Court granted a summary judgment to Farmers. The Court of Appeals reversed the circuit court. We reinstate the judgment of the circuit court.

Appellee (hereinafter "Willmott") operates a logging business, Willmott Hardwoods, Inc., the sole owner being John Willmott. The facts of the case are as follows. Willmott had an outstanding loan with Fifth Third Bank. As security for the loan, Willmott gave Fifth Third a mortgage on the business' real property. Willmott also gave Fifth Third Bank personal guarantees and mortgages on his personal property.

Willmott became dissatisfied with the Fifth Third loan, and explored obtaining loans from other banks to finance the business and pay the debt to Fifth Third. However, he could not find a bank to assume the entire debt. Willmott decided to separate his loans, and applied for a $780,000 real estate loan from Farmers. Willmott also negotiated with National City Bank for a line of credit and also for service as Willmott's operating bank. Together, these loans would satisfy the indebtedness to Fifth Third, whereupon Fifth Third would release the real estate lien. The real estate would then be pledged to Farmers as security for its loan.

On July 11, 1996, Farmers sent Willmott a Commitment Letter to lend money under specified terms and conditions. The letter stated that the loan was to close by August 10, 1996, reading:

> Closing of the loan shall occur on or before August 10, 1996 unless extended in writing by the Bank. If the loan is not closed by the specified closing date, this letter and the Bank's obligation to make the loan shall terminate without any further liability or obligation to the Bank.

Willmott accepted the commitment letter and paid a loan fee of $2,500.

On August 2, 1996, David Smith, the Vice President of Farmers, sent Willmott a draft Loan Agreement that was to be executed at the closing. This agreement states that the closing of the loan "shall occur... on August 10, 1996 at 9:00 a.m. local time or at such other time and such

other date as the parties shall mutually agree upon."

During the first week of August, Willmott informed Farmers that National City had decided not to serve as his operating bank, and that he would continue to use Fifth Third. Consequently, Willmott would not be able to close the loan by August 10, 1996, due to the inability to pay off Fifth Third and obtain a lien release on the real estate, which was to be security for Farmers' loan. Willmott claims Smith agreed upon August 23, 1996, as the closing date and reassured him that Farmers would not have a problem with the change of the operating bank from National City to Fifth Third. Willmott also claims that he informed Smith that he had to secure the loan by September 1, 1996, or else his business would be forced to close. According to Willmott, he met with Smith again on August 16, 1996, where Smith provided a handwritten note that states "Closing 23rd—money available before our closing." On August 14, 1996, Fifth Third approved Willmott's request to act as its operating bank.

On August 19, 1996, Smith contacted Willmott to inform him that the loan would not close on August 23, 1996, and that the matter would be resubmitted to Farmers' Board during its next meeting in September. On September 1, 1996, Willmott closed the business and liquidated his assets to satisfy the obligation to Fifth Third.

Willmott filed a complaint in the Scott Circuit Court asserting various claims against Farmers for failure to make a loan, fraud, equitable estoppel, and breach of the duty of good faith and fair dealing. In granting summary judgment, the trial court ruled that:

1. the expiration date in the Commitment Letter was clear and unambiguous and ought to be enforced according to its terms;

2. the statute of frauds at KRS 371.010(9) barred Willmott's attempt to argue that the Commitment Letter had been extended by an oral agreement;

3. there was no writing between the parties to satisfy the statute of frauds;

4. equitable estoppel did not create an exception to the application of the statute of frauds.

The trial court also disposed of the claims based on breach of duty of good faith and fair dealing, fraud, and Willmott's personal claims and interference with business contracts.

The Court of Appeals reversed. The panel turned to Farmers' August 2, 1996, draft Loan Agreement and stated that it was an offer in writing of an agreement to set an alternate date. That writing was sufficient to create an issue of fact, when coupled with the actual setting of an alternate date, settled upon by the parties. Furthermore, the Court of Appeals held that detrimental reliance by one party upon the representation of another precludes application of the statute of frauds to bar the action. The Court of Appeals also reversed the summary judgment on Willmott's claims of fraud, good faith and fair dealing, and his personal claims.

I. Statute of Frauds

 Farmers claims that the Commitment Letter, signed by both parties, contained a clear and unambiguous expiration date of August 10, 1996, unless extended in writing by the bank, and when the loan was not closed by August 10, 1996, Farmers' obligation ceased. This Commitment Letter satisfied the statute of frauds as a written promise to lend money. Farmers argues that the statute of frauds requires for any amendment to this promise to be

in writing and compliant with the statute of frauds, and that no such writing exists.

Willmott alleges that, at the very least, there are factual issues that exist regarding an agreement between Willmott and Farmers to extend the closing date. Willmott claims that the draft Loan Agreement sent by Farmers' Vice President Smith, which states that the loan was to close on August 10, 1996, or at "such other date as the parties shall mutually agree upon," offered an alternative, later agreed upon date for the closing. Willmott also relies upon oral representations made by Smith, in addition to a written note stating "closing 23rd," to show that the parties had agreed upon a later closing date. Willmott argues that the statute of frauds is not applicable to a modification of the closing date because this change did not materially modify the obligation of the parties, and Farmers did not specify that time was of the essence in the closing. Willmott cites to *Murray v. Boyd*, 165 Ky. 625, 177 S.W. 468, 471–72 (1915), to support the proposition that the statute of frauds does not apply to subsidiary or incidental agreements that do not materially modify the writing.

Subsection nine (9) of Kentucky's statute of frauds, KRS 371.010, concerns promises to lend money. It reads:

No action shall be brought to charge any person

(9) Upon any promise, contract, agreement, undertaking, or commitment to loan money, to grant, extend or renew credit, or make any financial accommodation to establish or assist a business enterprise including, but not limited to the purchase of realty or real property, but this subsection shall not apply to agreements pursuant to which credit is extended by means of a credit card or similar device, or to consumer credit transactions;

unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent.

██ Farmers' original contract to lend to Willmott falls within the coverage of subsection nine (9) of the statute of frauds. Farmers' alleged promises, oral or otherwise, to postpone the closing date must also comply with the statute of frauds if extending the closing date materially affects the terms of the written agreement. *Murray, supra* ("If the contract is required to be in writing, evidence will not be admitted to prove a subsequent parol agreement which materially modifies the writing; that is, if the subsequent agreement is itself within the statute of frauds, and of a nature required by law to be in writing."); *See also Specht v. Stoker*, 314 Ky. 786, 237 S.W.2d 78, 79 (1951). This question turns on whether time was of the essence in the contract. *See Klatch v. Simpson*, 237 Ky. 84, 34 S.W.2d 951, 954–55 (1931)(The statute of frauds does not apply to an oral modification of a written contract with respect to the mode or time of performance where time is not of the essence of the contract). If the August 10, 1996, closing date is essential to the contract, then altering this date would be a material change in the contract necessitating compliance with the statute of frauds. Whether time is of the essence of the contract "is viewed from the standpoint of the parties as gathered from the contract involved, under the rule that unless the intention to make time of the essence is evidenced by expression, or implication, it may not be so regarded." *Distillery Rectifying & Wine Workers International Union of America v. Brown–Forman Distillers Corp.*, 308 Ky. 380, 213 S.W.2d 610, 612–13 (1948).

Farmers and Willmott did not expressly agree that the time of closing was of the essence, as neither the contract itself, nor subsequent agreements between the parties, specifically states that time was of the essence. Therefore, we must consider if an intention to make time of the essence may be implied from the words of the contract. In *Distillery*, this Court considered a contract between Union workers and employers. The agreement contained a clause specifying that it "shall be effective... to May 1, 1946, and during each year thereafter unless 90 days notice in writing is given by either party." *Id.* at 611. The employer alleged that the contract was automatically renewed because no written notice was given within 90 days of expiration, while the Union claimed that they gave oral notification. Although the Court's decision did not rely upon determining whether time was of the essence of the contract, the Court stated, "it is to be gathered without difficulty that by strong implication the requirement of 90 days written notice was essential, because termination or continuation depended upon the required notice." *Id.* at 613; *See also FS Investments, Inc., v. Asset Guaranty Insurance Co.,* 196 F.Supp.2d 491 (E.D.Ky.2002) (letter of intent with expiration deadline reflects parties' intention to make time an essential element of the contract). Like the contract in *Distillery*, the Commitment Letter in the instant case contains language that indicates that the contract was to expire if the loan was not closed by August 10, 1996. The contract reads, "If the loan is not closed by the specified closing date, this letter and the Bank's obligation to make a loan shall terminate without any further liability or obligation to the Bank." Because the contract stated that it would expire if the closing date was not met, by implication, the closing time was of the essence in the contract.

■ There are no agreements extending the contract's expiration date that satisfy the statute of frauds. The August 2, 1996, Draft Loan Agreement was clearly marked "Draft" and was not signed by both parties. Willmott's oral negotiations with Smith clearly do not constitute a modification under the statute of frauds, and the written note stating "Closing 23rd—money available before our closing" is ambiguous and is unsigned. As a result, we find that the contract's expiration date of August 10, 1996, was not extended.

## II. Equitable Estoppel

■ Willmott claims that Farmers continued negotiations after learning that National City Bank was out and that the August 10, 1996, deadline would not be met. Furthermore, Farmers did not state that the expiration date in the Commitment Letter was a "drop dead date." As such, Willmott argues that Farmers is estopped from denying the continued enforceability of the contract. Willmott claims that the statute of frauds should not bar his fraud and equitable estoppel claims because he relied upon both the Draft Loan Agreement, and Farmers' oral representations of a time extension, to his detriment.[1] The Court of Appeals agreed with Willmott, and found that the statute of frauds could not bar the action when there is detrimental reliance by one party upon the representations of another.

Farmers argues that the Court of Appeals erred in finding that detrimental reli-

---

1. The trial court did not rely upon the statute of frauds to dismiss Willmott's fraud claim. Rather, the trial court concluded that Willmott did not plead sufficient facts for actionable fraud. Therefore, we will not consider whether there is a fraud exception to the statute of frauds.

ance can be an exception to the statute of frauds, and that under such a holding a plaintiff could always allege detrimental reliance, thereby nullifying the statute of frauds.

In finding a detrimental reliance exception to the statute of frauds, the Court of Appeals relies upon *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464 (Ky.1999). *Rickert* was an appeal from a jury verdict awarding damages to an employee on claims of fraud and promissory estoppel. The claims stemmed from an alleged promise made by the employer to the employee regarding his continued employment. In discussing the statute of frauds, this Court found that it was inapplicable to the case, but went on to state that "the statute of frauds is not a bar to a fraud or promissory estoppel claim based on an oral promise of indefinite employment." *Id.* at 471. The Court of Appeals incorrectly inferred from *Rickert* that detrimental reliance is a bar to the statute of frauds. All that may be deduced from *Rickert* concerning the statute of frauds is that in a fraud or promissory estoppel action involving a promise of employment, it does not act as a bar. Therefore, we must still determine whether an equitable estoppel claim pertaining to a credit agreement must adhere to KRS 371.010(9) of the statute of frauds.

■■■ The purpose of the statute of frauds is to prevent, not facilitate, fraudulent conduct. *Rickert, supra,* at 471. Estoppel is a doctrine of equity, and equitable relief may be granted to relieve the harsh effects of the statute of frauds. *Smith v. Ash,* 448 S.W.2d 51, 53 (Ky.1969). However, where the statute of frauds is clear and unambiguous, as is the case here, equitable relief should only be granted under the most limited of circumstances, lest the Court run afoul of judicially amending the statute in violation of separation of powers. *See C.G. Campbell & Son, Inc. v. Comdeq Corp.,* 586 S.W.2d 40 (Ky.App. 1979) (Court of Appeals refused to create an equitable exception to the U.C.C.'s statute of frauds, KRS 355.2–201).

In the instant case, we agree with the trial court in its refusal to find an equitable estoppel exception to the statute of frauds. According to the trial court, the undisputed facts show that it was Willmott, not Farmers, who was not ready, willing, and able to close the loan on August 10, 1996, because he had not satisfied the necessary preconditions. On August 10, 1996, by the expressed terms of the contract, the agreement for the loan agreement expired. After it became apparent that Willmott would not be able to close the loan on August 10, 1996, Farmers continued to discuss the possibility of making the loan to Willmott, although they were under no obligation to do so. It was within Farmers' discretion to continue discussions, but Farmers did not waive its right to enforce the express terms of the Commitment Letter by doing so.

### III. Fraud

■■ Willmott raises fraud and misrepresentation claims against Farmers, alleging that Farmers made material misrepresentations that the August 10, 1996, closing date. would be extended, and that National City Bank's participation was not a prerequisite to the loan agreement. Willmott claims that these misrepresentations were either known to be false when made or were made recklessly; that Willmott was induced to continue negotiations with Farmers and not seek alternative financing; and that Willmott relied upon these representations to its detriment. The trial court ruled that Willmott did not establish the elements of fraud by clear and convincing evidence because it failed to show an intent to deceive on the part

of Farmers. We agree with the trial court.

A party claiming fraud must establish six elements by clear and convincing evidence: a) material representation, b) which is false, c) known to be false or recklessly made, d) made with inducement to be acted upon, e) acted in reliance thereon, and f) causing injury. *Rickert, supra,* at 468. Intent to deceive is a necessary element of actionable fraud. *Smith v. Barton,* 266 S.W.2d 317 (Ky.1954). The trial court concluded that, despite an exhaustive discovery, nothing in the record suggests that throughout its negotiations, Farmers never intended to provide Willmott with a loan. We affirm the trial court's decision.

### IV. Duties of Good Faith and Fair Dealing

Willmott alleges that Farmers breached its implied duty of good faith and fair dealing by failing to inform Willmott that National City Bank's participation as operating bank was a precondition of the loan, and failing to make all reasonable preparations to ensure that a closing date of August 10, 1996, was possible. The Court of Appeals reversed summary judgment, finding that there was a question of fact regarding whether Farmers fulfilled these duties. We reverse the Court of Appeals.

Within every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out. *Ranier v. Mount Sterling National Bank,* 812 S.W.2d 154, 156 (Ky.1991). Farmers did not breach the implied covenant of good faith and fair dealing. As we have discussed above, the loan did not close on August 10, 1996, because Willmott was not in a position to close, and on that date, the contract ex-

pired. An implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights. *Hunt Enterprises, Inc. v. John Deere Indus. Equipment, Co.,* 162 F.3d 1161, 1998 WL 552795 (6th Cir.1998). When the expiration date passed, Farmers had a contractual right to terminate the loan agreement.

Because we find no liability on the part of Farmers, we need not discuss the personal claims raised by John Willmott. Accordingly, we reverse the Court of Appeals and reinstate the trial court's summary judgment.

LAMBERT, C.J., GRAVES, JOHNSTONE, J.J. concur.

WINTERSHEIMER, J., concurs in result only.

ROACH, J., not sitting.

SCOTT, J., dissents by a separate opinion in which COOPER, J., joins.

SCOTT, Dissenting Justice.

The commitment letter dated July 11, 1996 contains the following language regarding the closing date of the loan: "Closing of the loan shall occur on or before August 10, 1996 *unless extended in writing by the Bank.*"

Subsequently, on August 2, 1996, David Smith, the Bank's vice-president, sent a signed cover letter with an accompanying written Loan Agreement to the Appellees which contained the following language: "the closing of the loan shall occur...on August 10, 1996 at 9:00 a.m. local time *or at such other time and such other date as the parties shall mutually agree upon.*" (Section 8.9, draft Loan Agreement). The author of this written agreement, Kenneth Sagan, was the Bank's attorney. He testified this phrase was meant to suggest the closing could occur before, on or after

August 10, 1996. Willmott also understood this phrase to be a written extension of the closing date.

Even more telling, the parties actually met after the originally scheduled closing date of August 10, 1996, to discuss the closing re-scheduled for August 23rd, 1996. Present at this August 16th meeting were Willmott; vice-president of the Bank, David Smith; and Hardwoods' accountant, Rhonda Mash. Smith's notes from the meeting indicate "closing 23rd—money available before closing."

On August 19th, in a conference call with Willmott and Bruce Lankford, Willmott's attorney, Smith confirmed the loan was to close on Friday, August 23, 1996, and authorized Lankford to perform the title search. Later that same day, Smith called Willmott to tell him the loan would not be closed on the 23rd, and that the matter would be resubmitted to the Bank's Board of Directors. The Bank then refused to complete the loan—citing the failure to close by August 10, 1996.

"The goal of any court in interpreting a contract is to ascertain and to carry out the original intentions of the parties." *Wilcox v. Wilcox*, 406 S.W.2d 152, 153 (Ky.1966). Upon these facts, I believe the Loan Agreement modified the commitment letter and acted as a written extension of the closing date to "...such other time and such other date as the parties shall mutually agree upon."

The record shows that John Willmott of Willmott Hardwoods and David Smith, vice-president of the Bank, orally agreed before the original closing date of August 10, 1996, to extend the closing date to August 23, 1996. Thus, even in this context, I agree with the Court of Appeals that a "written or oral extension of the closing date by agreement of the parties holds the expiration date in abeyance until the alternate date set."

Smith noted in his August 16th meeting with Willmott and Rhonda Mash, "closing 23rd—money available before closing." I believe this note acts as a written extension of the closing date made within the extended time frame justified above. Even if the parties' oral agreement to extend the closing date could arguably be said not to hold the expiration date in abeyance until the later agreed upon date, I believe this note could be construed as a retroactive extension of the time for closing. I know of no legal principle that would preclude the party to be charged from granting a retroactive extension of time for the performance of a contract. The commitment letter did not require that the written extension be signed (as does, *e.g.*, the Statute of Frauds, itself). KRS 371.010.

Furthermore, "it is competent to vary the date of, or time for performance of, a contract, by contemporaneous parol extrinsic testimony." *Apple v. McCullough*, 239 Ky. 74, 38 S.W.2d 955, 957 (1931). And if there was any ambiguity about the handwritten note, "ambiguous and uncertain expressions in the written evidence of a contract may be explained by parol evidence ... to the end that the true meaning of the contract may be ascertained," *Akins v. City of Covington*, 265 Ky. 740, 97 S.W.2d 588, 590 (1936) (quoting *Macpherson v. Bacon's Ex'r*, 180 Ky. 773, 203 S.W. 744, 746–47 (1918)); and parol evidence can be used to clarify ambiguities arising out of extrinsic facts. *Id.* (citing *Breeding's Heirs v. Taylor's Heirs*, 52 Ky. 385, 393–94 (13 B. Mon. 477, 487 (1852)).

Thus, evidence of what was said at the August 16th meeting and of the subsequent telephone call canceling the August 23rd closing date would be admissible to clarify that the handwritten note had, indeed, referenced an agreement to retroac-

tively extend the time for the closing until August 23rd.

Here the majority found that the Bank's alleged promises to postpone the closing date violated the statute of frauds since extending the closing date materially affected the terms of the written agreement. With this assertion, I cannot agree. I believe extending the closing date was not a material modification of the original agreement between the parties.

As indicated in *Klatch v. Simpson*, 237 Ky. 84, 34 S.W.2d 951, 954–55 (1931), the statute of frauds does not apply to an oral modification of a written contract with respect to the mode or time of performance where time is not of the essence of the contract.

Thus, if time is not "of the essence," the parties' subsequent written and oral extensions of the closing date for the loan need not meet the strict requirements of the statute of frauds. Notably, this contract did not designate time being "of the essence" as would normally be the case.

A well-founded rule in Kentucky law provides, "unless the intention to make time of the essence is evidenced by expression, or implication, it may not be so regarded." *Distillery Rectifying & Wine Workers International Union of America v. Brown–Forman Distillers Corp.*, 308 Ky. 380, 213 S.W.2d 610, 612–13 (1948) (internal citation omitted). Yet, the majority supplies an intention to make "time of the essence" as implied from the words of the contract. More specifically, the majority reasons that because the contract stated it would expire if the closing date was not met—by implication, the closing time was of the essence to the contract. This reasoning ignores not only *Distillery Rectifying & Wine Workers v. Brown–Forman Distillers Corp.*, cited above, but the plain language of the commitment letter, which specifically authorized a written ex-

tension of the closing date by an agreement which the evidence supports was actually made!

Moreover, this case is distinguishable from *McConathy v. Lanham*, 116 Ky. 735, 76 S.W. 535 (1903), which required an extension of the expiration date to be in writing, because the writing there did not contain words specifically allowing for an extension of the expiration date. The writing in *McConathy* stressed "if the consideration herein named is not paid on or before the 31st of December, 1899, this contract shall be null and void." *Id.* at 536. Therefore, in *McConathy*, the parties' subsequent oral agreement to extend the expiration date was rightly ruled unenforceable. This was not the case here.

Additionally, the majority disagrees with the Court of Appeals in its holding that the statute of frauds cannot bar an action where there is detrimental reliance by one party upon the representations of another, citing *United Parcel Service v. Rickert*, 996 S.W.2d 464, 469 (Ky.1999). The majority felt the Court of Appeals incorrectly inferred from *Rickert* that detrimental reliance is a bar to the statute of frauds. They limit *Rickert* to apply only in a fraud or promissory estoppel action involving a promise of employment.

Yet, like the Court of Appeals, I too, read *Rickert* to apply when, as here, Willmott detrimentally relied on the Bank's written and oral assertions that the closing date would be and was extended to August 23, 1996. I believe if the Bank intended for August 10, 1996 to be a "drop dead date," or if a failure on Willmott's part to obtain financing specifically from National City Bank would void the entire deal between the Bank and Willmott, the Bank had a duty to make these facts known. One party cannot allow the other to detrimentally rely on its actions and assertions,

then later assert the statute of frauds as a defense to performance.

For the above stated reasons, I respectfully dissent.

COOPER, J., joins this dissent.