RENDERED: MAY 12, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0380-MR


PAT DOYLE AND SHEILA DOYLE                                    APPELLANTS


v.            APPEAL FROM OLDHAM CIRCUIT COURT
              HONORABLE JERRY CROSBY, II, JUDGE
              ACTION NO. 19-CI-00390


BLAKE-MOORE CONSTRUCTION,
INC.                                                            APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, JONES, AND McNEILL, JUDGES.

McNEILL, JUDGE:  Pat and Sheila Doyle (the "Doyles") appeal from a judgment of the Oldham Circuit Court following a bench trial.  Finding no error, we affirm.

In 2018, the Doyles contacted Blake-Moore Construction, Inc. ("BMC") about building an unattached garage on their property.  BMC agreed to the project on a cost-plus management fee arrangement and produced a written

estimate for the project with itemized costs for permits, Builder's Risk insurance, Workers' Compensation insurance, materials, and labor for subcontractors totaling $72,530.08, including a 12% project management fee of $7,771.08.  The Doyles rejected the estimate, believing it to be high, and agreed BMC would perform some of the construction with Mr. Doyle performing the rest.  The details of this oral agreement were not reduced to writing.[1]

The project proceeded, although the parties disagreed on the nature of their arrangement.  The Doyles believed the project would be billed on a cost-plus 12% management fee basis as in the original estimate while BMC understood that they were operating as a subcontractor with Mr. Doyle as the general contractor.  In this scenario, BMC would send invoices to the Doyles as they would when acting as a subcontractor, including a fee for their services.

On October 17, 2018, the Doyles paid a deposit of $8,500 and work on the garage began.  At some point, the Doyles entered a second contract with BMC to construct a new deck on their house for $14,000.  This agreement was never committed to writing and there was no discussion of a cost-plus fee arrangement.  The Doyles made two more payments of $20,471.87 and

---

[1] While Mr. Doyle testified that he signed the original estimate and marked which items he intended to perform, BMC denied the existence of a signed agreement and no such document was entered into evidence.

$21,033.90,[2] respectively, over the course of the projects for a total of $50,005.77, including $14,915.35 for the deck.

By mid-January both projects were substantially[3] completed. The Doyles asked BMC for invoices and receipts from their contractors to verify the total cost of the project, believing it to be a cost-plus arrangement. BMC provided some invoices to the Doyles but not to their satisfaction and the parties' relationship deteriorated, resulting in the Doyles removing BMC from the job. Following termination, BMC completed a final accounting. Its total costs for both projects were $44,580.28, which included $969.53 for fuel, Builder's Risk insurance, Workers' Compensation insurance, and $5,580.00 for BMC labor.

The Doyles dispute this accounting, primarily taking issue with BMC's charge for its own labor. By its own admission, BMC never discussed this cost with the Doyles. Further, the 124 hours BMC charged for labor were an estimate and there are no timesheets detailing these hours. According to the Doyles' calculation, they overpaid on the project by $7,011.42.

_____

[2] The December 12, 2018 invoice was for $28,971.87 and the December 31, 2018 invoice was for $21,033.90.

[3] Work yet to be completed on the garage included: installing the garage doors, insulation, gutters, soffit, and downspouts, and brick work on the garage exterior; work remaining on the deck included installing the deck railing and steps.

The Doyles filed a complaint in Oldham Circuit Court alleging breach of contract; fraud/misrepresentation; violations of the Kentucky Consumer Protection Act ("KCPA"), KRS[4] 367.170; unjust enrichment; bad faith; and punitive damages.[5]  Following a bench trial, the trial court dismissed all claims.  This appeal followed.

Our standard of review of a trial court's findings of fact after a bench trial is whether they are clearly erroneous.  CR[6] 52.01.  Factual findings are not clearly erroneous if they are "supported by substantial evidence."  *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005) (citations omitted).  "Substantial evidence is evidence, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person."  *Id.* (citations omitted).  The trial court's conclusions of law are reviewed *de novo*. *Id.*

The Doyles argue the trial court erred in dismissing their claims, specifically that its findings were clearly erroneous, and that it misapplied the law to the facts.  Fundamentally, the Doyles' allegations of error all center around the

---

[4] Kentucky Revised Statutes.

[5] The Doyles filed an amended complaint on June 29, 2020, adding additional claims.  The original complaint stated claims for breach of contract and unjust enrichment while the amended complaint added claims for fraud/misrepresentation, violations of the Kentucky Consumer protection Act, bad faith, and punitive damages.

[6] Kentucky Rules of Civil Procedure.

-4-

trial court's construction of the parties' agreement. The Doyles claim damages of $7,411.32 based upon their belief the parties were operating under a cost-plus 12% agreement. However, the trial court determined any such agreement ended when the Doyles rejected BMC's original estimate. This finding was supported by substantial evidence.

First, it is unclear the parties ever entered a cost-plus agreement. Terry Moore, BMC's owner,[7] testified the parties never reached a cost-plus agreement because the Doyles rejected their estimate. Had the Doyles accepted the estimate, BMC would have created a written contract using actual bids from suppliers and subcontractors. What *is* clear is that the original estimate contained a 12% management fee and that the Doyles rejected this estimate.

Moore testified that once the Doyles rejected the estimate and asked BMC to perform only parts of the project, it considered itself a subcontractor of the Doyles. In this arrangement, it would submit invoices to the Doyles, like any other subcontractor, including a fee for its services. No evidence of any updated price agreement between the parties was ever introduced.

In fact, the best evidence of the agreement existing between the parties once the Doyles rejected the original estimate is the two invoices, tendered to and paid by the Doyles, totaling $50.005.77, which represent the total cost the

---

[7] BMC is co-owned by Terry Moore and Bob Blakemore.

Doyles paid for the garage and deck, including the alleged overpayment of $7,411.32. These invoices contain itemized costs for the work BMC performed (or subcontracted) and specifically include a 15% management fee. The Doyles paid both invoices without objection, suggesting these numbers reflected the parties' intentions, or at least were not disagreeable to the Doyles. Regardless, the Doyles cannot now complain of prices which were clearly set forth in the invoices and about which they did not object at the time. In sum, the trial court's finding that the parties did not have a cost-plus 12% agreement once the Doyles rejected BMC's original estimate was not clearly erroneous.

Based upon this finding, the trial court held the Doyles could not prove their claims for conversion, unjust enrichment, violation of the KCPA, fraud/misrepresentation, bad faith, or punitive damages. The Doyles' claims were all premised on their understanding the parties were operating under a cost-plus 12% agreement. We agree with the trial court's conclusion but will address each claim briefly in turn.

Turning first to the Doyles' claim for conversion,[8] the trial court construed this claim as referring to their alleged overpayment of $7,411.32. Conversion is "the wrongful exercise of dominion and control over property of

_____

[8] We would note that neither the original nor the amended complaint state a claim for conversion, however, because the trial court assumed and specifically considered the claim in its judgment, we will address it on the merits.

-6-

another[.]" *State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626, 627 (Ky. App. 1990). The elements of the tort of conversion are: (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property. *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. App. 2014) (quoting *Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005)).

The Doyles' conversion claim fails because they cannot prove entitlement to the $7,411.32 they allege they overpaid. This alleged overpayment stems from the Doyles' belief the parties had a cost-plus 12% agreement. However, as the trial court found, any such agreement ended when the Doyles rejected the original estimate. As held above, this finding was supported by substantial evidence. Therefore, the Doyles cannot prove the elements of conversion and the trial court did not err in dismissing this claim.

To recover on a claim of unjust enrichment a plaintiff is required to "prove three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of [that] benefit without payment for its value." *Furlong Dev. Co. v. Georgetown-Scott Cnty. Planning & Zoning Comm'n*, 504 S.W.3d 34, 39-40 (Ky. 2016) (internal quotation marks and citation omitted). We agree with the trial court that the Doyles' claim for unjust enrichment fails because they cannot prove an inequitable overpayment to BMC. The Doyles' alleged overpayment hinges on a cost-plus 12% agreement, which the trial court determined did not exist. Therefore, we find no error.

Next, the KCPA prohibits "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or business[.]" The trial court held the Doyles' payment of invoices clearly depicting BMC's charges, including a 15% management fee, was persuasive evidence against claims of unfair, false, misleading, or deceptive billing practices. This finding was supported by substantial evidence. Absent any evidence of unfair, false, misleading, or deceptive acts, the Doyles' claim for violations of the KCPA fails.[9] The trial court did not err in dismissing this claim.

---

[9] We question whether the KCPA applies to the facts of this case. *See Joiner v. Tran & P Properties*, *LLC*, 526 S.W.3d 94, 99 (Ky. App. 2017) (citation omitted) ("[T]he KCPA does not

Fraud by misrepresentation requires proof that "(1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff." *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) (citations omitted). The trial court found no evidence of false or misleading statements by BMC designed to induce the Doyles into hiring BMC to construct the garage or deck. This finding was supported by substantial evidence.

The Doyles' fraud allegations all concern BMC's purported overcharging for its services, which, again, stems from the Doyles' belief the parties had a cost-plus 12% agreement. The trial court found no such agreement to exist. Therefore, the trial court properly dismissed this claim.

The trial court dismissed the Doyles' bad faith claim, finding that common law bad faith claims arise only under insurance contracts. While we disagree with the trial court's reasoning, we agree with its result. "Within every contract, there is an implied covenant of good faith and fair dealing, and contracts

---

apply to single real estate transactions."). However, because we affirm the trial court's dismissal of this claim on other grounds, we decline to pursue the issue.

impose on the parties thereto a duty to do everything necessary to carry them out."

*Farmers Bank and Tr. Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*,

171 S.W.3d 4, 11 (Ky. 2005) (citation omitted). "An implied covenant of good

faith and fair dealing does not prevent a party from exercising its contractual

rights." *Id.* (citation omitted). "In order to show a violation of the implied

covenant of good faith and fair dealing . . . the party asserting the violation must

'provide evidence sufficient to support a conclusion that the party alleged to have

acted in bad faith has engaged in some conduct that denied the benefit of the

bargain originally intended by the parties.'" *PBI Bank, Inc. v. Signature Point*

*Condominiums LLC*, 535 S.W.3d 700, 718 (Ky. App. 2016) (quoting 23 Williston

on Contracts § 63:22 (4th ed. 2004)). As with its other claims, the Doyles' bad

faith claim primarily concerns its alleged overpayment for BMC's services, which

is, again, based off a cost-plus 12% agreement. The Doyles' appellate brief

claims:

> the bad faith and unfair dealing of BMC is obvious and
> actionable. Again, it would not present invoices to show
> actual costs, it never gave a final accounting, it
> overcharged Doyle, it unilaterally changed the
> management fee from 12 to 15%, it falsely billed 124
> hours of labor, it created magical accounting, and it
> would not complete the job according to schedule.

Without a cost-plus 12% agreement, these allegations are not evidence

of bad faith. Without a cost-plus 12% agreement, there is no evidence BMC

-10-

engaged in any conduct which denied the benefit of the bargain originally intended by the parties. Again, as noted above, the best evidence of the parties' intentions after the Doyles rejected the original estimate is the invoices paid by the Doyles without objection, invoices which included the alleged overpayment the Doyles now seek to recover. The only claim not dependent on a cost-plus 12% agreement, that BMC failed to complete the job according to schedule, also fails because, as the trial court found, BMC stopped working at the Doyles' request. This finding was supported by substantial evidence. Therefore, the trial court did not err in dismissing this claim.

Concerning punitive damages, KRS 411.184(2) provides: "A plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." The trial court found insufficient evidence of oppression, fraud, or malice to award punitive damages. The Doyles' "arguments" in opposition are merely conclusory. As such, we find no error. *See Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005) ("It is not our function as an appellate court to research and construct a party's legal arguments, and we decline to do so here.").

The Doyles additionally argue the trial court erred in failing to make further findings, or to amend its findings. Following entry of the trial court's order

dismissing their claims, the Doyles moved pursuant to CR 52.02 for the court to amend its findings or make additional findings in their favor. In their appellate brief, they list numerous facts they allege the trial court failed to find. Once again, the Doyles simply disagree with the trial court's interpretation of the evidence. However, "judging the credibility of witnesses and weighing evidence are tasks within the exclusive province *of the trial court.*" *Vinson v. Sorrell*, 136 S.W.3d 465, 470 (Ky. 2004) (quoting *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003)). Without addressing them individually, these alleged missed findings are all dependent upon a cost-plus 12% agreement. As the trial court found, this agreement ended when the Doyles rejected the original estimate. We find no error.

Lastly, the Doyles argue the trial court erred in failing to grant their CR 50.02 motion for judgment notwithstanding the verdict and motion for a new trial, CR 59.05 motion to alter, amend, or vacate, and CR 60.02 motion for relief from the final judgment. The Doyles' arguments, again, are based upon their different interpretation of the parties' agreement and are conclusory. We therefore decline to address them and find no error.

Based upon the foregoing, the judgment of the Oldham Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Gregg Y. Neal
Shelbyville, Kentucky

BRIEF FOR APPELLEE:

Chelsey S. Brammell
New Castle, Kentucky